279 N.J. Super. 306 (1995)
652 A.2d 774
PATRICK BRETT AND ELISA RAMUNDO, PLAINTIFFS-RESPONDENTS,
v.
GREAT AMERICAN RECREATION, INC., DEFENDANT-APPELLANT, AND STONEHILL PROPERTY OWNERS ASSOCIATION, INC., HOTEL SECTION CONDOMINIUM COUNCIL, INC., DEFENDANTS/THIRD-PARTY-PLAINTIFFS, AND RUDOLPH MAURIZZI, DEFENDANT/THIRD-PARTY-PLAINTIFF/RESPONDENT,
v.
DENISE MCDADE, NANCY MORGAN, THIRD-PARTY-DEFENDANTS. KAREN FURMAN, PLAINTIFF-RESPONDENT,
v.
GREAT AMERICAN RECREATION, INC., DEFENDANT-APPELLANT, AND STONEHILL PROPERTY OWNERS ASSOCIATION INC., HOTEL SECTION CONDOMINIUM COUNCIL, INC., DEFENDANTS/THIRD-PARTY-PLAINTIFFS,
v.
RUDOLPH MAURIZZI, THIRD-PARTY-DEFENDANT/RESPONDENT. DONALD PISARCIK, PLAINTIFF-RESPONDENT,
v.
GREAT AMERICAN RECREATION, INC., DEFENDANT-APPELLANT, AND STONE HILL PROPERTY OWNERS ASSOCIATION INC., HOTEL SECTION CONDOMINIUM COUNCIL, INC., DEFENDANTS, AND RUDOLPH MAURIZZI, DEFENDANT-RESPONDENT. MEGAN RUSSELL, PLAINTIFF-RESPONDENT,
v.
GREAT AMERICAN RECREATION, INC., DEFENDANT-APPELLANT, AND STONE HILL PROPERTY OWNERS ASSOCIATION INC., HOTEL SECTION CONDOMINIUM COUNCIL, INC., DEFENDANTS/THIRD-PARTY-PLAINTIFFS, AND RUDOLPH MAURIZZI, LISA CARMELITANO, THIRD-PARTY-DEFENDANTS/RESPONDENTS, AND KAREN FURMAN, THIRD-PARTY-DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1994.
Decided February 8, 1995.
*310 Before Judges BRODY, LONG and ARNOLD M. STEIN.
Samuel A. DeGonge argued the cause for appellant Great American Recreation, Inc. (Samuel J. McNulty, on the brief).
Philip G. Auerbach argued the cause for respondents Patrick Brett, Elisa Ramundo, Karen Furman and Donald Pisarcik (Auerbach & Cox, attorneys; Mr. Auerbach, on the brief).
John P. Doran argued the cause for respondent Megan Russell.
Anthony P. Pasquarelli argued the cause for respondent Rudolph Maurizzi (Methfessel & Werbel, attorneys; Jared E. Stolz, of counsel and on the brief).
Kevin J. Decoursey argued the cause for respondent Lisa Carmelitano (O'Toole & Couch, attorneys; Michael Della Rovere, on the brief).
The opinion of the Court was delivered by BRODY, P.J.A.D.
Plaintiffs in this consolidated personal injury action are five of thirteen college friends, then twenty and twenty-one years old, who had planned to be together for a winter weekend at a condominium in Vernon Township. The owner of the condominium, third-party defendant Rudolph Maurizzi, is the uncle of third-party defendant Lisa Carmelitano, one of the group. He allowed the group to use his condominium, which is one of many such buildings built along the slope of Great Gorge North on either side of a vacant strip of land. During the winter, the vacant strip, which is about a thousand feet long, is the Bunny Buster ski trail. Defendants Stonehill Property Owners Association, Inc. and Hotel *311 Section Condominium Council, Inc. (Stonehill) own the land that contains the condominiums and the Bunny Buster trail. Defendant Great American Recreation, Inc. (defendant) operates the trail as a business under the terms of an easement from Stonehill.
Members of the group arrived on Friday at different times. Early arrivals spent part of the day skiing along various trails in the area. When they finished skiing, some of those returning to the condominium used or crossed the Bunny Buster trail even though defendant had turned off the lights on the trail because by then it had closed for the day. Between ten and eleven o'clock that night, after everyone in the group had arrived at the condominium, defendant turned on the Bunny Buster trail lights to enable its employees to groom the trail for the next day. Grooming is accomplished by using motor vehicles to pull heavy rollers over the trail to tamp down the snow.
Earlier that day, one member of the group discovered a toboggan that Maurizzi had stored in his condominium with other snow equipment. After the lights were turned on, the group decided to slide down part of the trail on the toboggan. There was evidence that other people at the time were using the trail for sledding and tobogganing. The toboggan could hold no more than six people so members of the group took turns riding it. The first two runs were uneventful.
The third run, with six on board, was a disaster. Starting from a point a bit higher than where the first two runs had begun, the toboggan slid down the trail, across a fifty- to sixty-foot flat expanse of snow at the base of the trail, over a flattened snow fence, and then over the edge of a twenty-foot dirt embankment to a parking lot below. One of the six fell off the toboggan before it dropped over the edge, thereby escaping injury. The other five, the plaintiffs, were seriously injured as their bodies hit the embankment, the parking lot and a parking-lot light pole. There was evidence that, at the time of the rescue operation, other people, not associated with plaintiffs' group, who were tobogganing *312 escaped injury by tumbling off their toboggan just before it dropped over the edge.
Claims against all third-party defendants were dismissed on their motions for partial summary judgment. Plaintiffs settled with Stonehill before trial. The jury found that under the New Jersey Ski Statute (Statute), N.J.S.A. 5:13-1 et seq., plaintiffs as a group, defendant and Stonehill were all negligent. The jury apportioned the negligence as follows: plaintiffs 22%, defendant 54% and Stonehill 24%. The jury found that fair and adequate total compensation to all plaintiffs would be $2,475,000.
Defendant's main arguments are: (1) defendant owed no duty to plaintiffs under either the common law or the Statute because they were trespassers at the time of the accident, and (2) even if plaintiffs were not barred from recovery as trespassers, the facts of this case do not render defendant liable under the terms of the Statute. Defendant raised these issues when it moved, unsuccessfully, for involuntary dismissal upon the conclusion of plaintiffs' presentation of evidence, R. 4:37-2(b), and for judgment at the close of all evidence, R. 4:40-1. For reasons that follow, we conclude that defendant is liable under the Statute and that the Statute does not bar the claims of trespassers.
Before discussing those issues, we note that, contrary to defendant's contention, although plaintiffs were trespassers at the time of the accident their claims would not necessarily be barred at common law. "Traditionally, a landowner owed no duty to a trespasser other than to refrain from acts willfully injurious." Renz v. Penn Cent. Corp., 87 N.J. 437, 461, 435 A.2d 540 (1981). The Court held, however, that even traditionally there was a higher standard of care due a trespasser "when the property owned by the landowner can be classified as a dangerous instrumentality." Id. at 462, 435 A.2d 540. Here, the design of the Bunny Buster trail rendered it unexpectedly dangerous. As this accident demonstrated, tobogganers who reached the bottom of the trail would be carried by momentum over the edge of a twenty-foot embankment resulting in serious injury.
*313 The Court in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 625 A.2d 1110 (1993), signaled its movement away from the rigid common-law distinctions among the standards of care due trespassers, licensees and invitees. There the Court held that a real estate broker owed a duty of reasonable care to a prospective home buyer who was injured when she failed to notice a step and fell while viewing the premises. She was there to attend an "open house" conducted by the broker. In imposing a duty of care on the broker, thereby departing from the common-law requirement that only the property owner had such a duty, the Court said:
The inquiry should be not what common law classification or amalgam of classifications most closely characterizes the relationship of the parties, but ... whether in light of the actual relationship between the parties under all of the surrounding circumstances the imposition on the broker of a general duty to exercise reasonable care in preventing foreseeable harm to its open-house customers is fair and just. That approach is itself rooted in the philosophy of the common law.
[Id. at 438, 625 A.2d 1110]
Here, on one side of that relationship are young people attracted to a condominium because of its proximity to snow trails and who, not unexpectedly, used defendant's adjacent lighted trail to toboggan after skiing hours. On the other side of the relationship is the operator of the trail, which, as designed, was a near-fatal trap to those using the trail to toboggan. Without having to decide the question, we suggest that even if the Ski Statute did not apply, the operator would have a common-law duty to take reasonable measures to warn such trespassers of that latent danger.
Indeed, such an obligation was recognized by defendant in its cross-claim against Stonehill. Stonehill employed security personnel to police the entire condominium area, including the Bunny Buster trail. That policing included keeping trespassers off the trail at night, but the security force was short-handed that night and failed to police the trail. Defendant's attorney argued in his summation that Stonehill was negligent because it failed to have its security force eject after-hours trespassers. We add that the duty of an owner or occupier of land to warn of such a serious *314 danger may not be delegable. Hopkins, supra, at 441, 625 A.2d 1110 (citing Sanna v. National Sponge Co., 209 N.J. Super. 60, 506 A.2d 1258 (App.Div. 1986)).
The Legislature enacted the Ski Statute in 1979 in response to a decision by the Vermont Supreme Court that deprived operators of ski areas of the absolute defense of assumption of risk. Sunday v. Stratton Corp., 136 Vt. 293, 390 A.2d 398 (1978), held that in adopting comparative negligence by statute the legislature of that state intended to replace the absolute defense of assumption of risk with the defense of plaintiff's comparative negligence. Our Legislature was thus moved to consider whether its adoption of the doctrine of comparative negligence in 1973 left ski area operators unfairly vulnerable to personal injury actions caused by accidents that are an inherent risk of skiing and related sports such as toboganning. See generally Reisman v. Great Am. Recreation, 266 N.J. Super. 87, 92-95, 628 A.2d 801 (App.Div.), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993).
Actions against a ski operator for personal injuries sustained by a skier on its ski slope are governed by common-law negligence principles unless the Ski Statute applies. Reisman, supra, 266 N.J. Super. at 97, 628 A.2d 801. The Statute, however, has wide application.
To determine whether it applies to the exclusion of common-law principles, one must look at two sections of the Statute: N.J.S.A. 5:13-4, which lists the duties of skiers,[1] and N.J.S.A. 5:13-5, which describes the risks that a skier is deemed to have assumed. If a factfinder finds that a skier was injured because he or she had violated one or more of those statutory duties or is deemed by the Statute to have assumed one or more of the stated risks of skiing, the Statute applies. The common law, and not the Statute, was applied in Reisman because there the skier's injury *315 was the result of neither the violation of a statutory duty nor the assumption of a statutory risk. He was injured while properly proceeding slowly down a beginner's slope when a drunken skier knocked him to the ground.
Once it is determined that the Statute applies, one must look at N.J.S.A. 5:13-3, which lists the responsibilities of the ski operator.[2] If the factfinder finds that the injuries were not proximately caused by the ski operator's violation of any of its statutory responsibilities, the Statute bars the injured skier from recovering compensation from the operator. If the factfinder finds that the injuries were proximately caused by the ski operator's violation of one or more of its statutory responsibilities, the skier is entitled to recover under principles of comparative negligence. N.J.S.A. 5:13-6.
Here it is obvious that plaintiffs violated at least one of the statutory duties and therefore the Statute applies. N.J.S.A. 5:13-4d provides:
A skier shall be the sole judge of his ability to negotiate any trail, slope, or uphill track and shall not attempt to ski or otherwise traverse any trail, slope or other area which is beyond the skier's ability to negotiate.
Plaintiffs were not able to negotiate the Bunny Buster trail. It is also obvious that plaintiffs are deemed to have assumed at least one statutory risk. N.J.S.A. 5:13-5 provides in part:
Each skier is assumed to know the range of his ability, and it shall be the duty of each skier to conduct himself within the limits of such ability, to maintain control of his speed and course at all times while skiing, to heed all posted warnings and to refrain from acting in a manner which may cause or contribute to the injury of himself or others.
Given that assumption, plaintiffs acted in a manner that contributed to their own injury.
It is important to note that these statutory violations and risk assumptions do not affect the percentage of a skier's comparative *316 negligence. That determination is left to the factfinder if it finds that the skier contributed to his or her own injuries by violating one or more of the skier's responsibilities. The skiers' statutory violations and risk assumptions initially serve merely to invoke application of the Statute.
A major issue at trial was whether defendant violated any of its statutory responsibilities. The focus was on the meaning of N.J.S.A. 5:13-3, which provides in relevant part:
a. It shall be the responsibility of the operator to the extent practicable, to:
* * * * * * * *
(3) Remove as soon as practicable obvious, man-made hazards.
Much of the confusion in arguing the liability issue at trial was caused by the next subsection of the Statute, which expressly excuses an operator from certain specific responsibilities to skiers. In that regard, N.J.S.A. 5:13-3 provides in relevant part:
b. No operator shall be responsible to any skier or other person because of its failure to comply with any provisions of subsection 3.a. if such failure was caused by:
* * * * * * * *
(3) Subject to the provisions of subsection 3.a.(3), the location of man-made facilities and equipment necessary for the ordinary operation of the ski area, such as ... fencing of any type....
Plaintiffs argued that the man-made hazard for which defendant was responsible was fencing. At first they seemed to suggest that the snow fence was a direct cause of the accident because it constituted a ramp that "launched" the toboggan down the embankment. Defendant responded by claiming the benefit of subsection -3b(3), which relieved it of any responsibility for the "location" of "fencing" "necessary for the ordinary operation of the ski area."
As plaintiffs developed their case with expert testimony, however, it became apparent that they were not claiming that the flimsy snow fence was a cause of the accident, but rather that a cause of the accident was defendant's failure to erect a more resistant fence that would restrain a toboggan and its passengers from *317 going over the edge of the embankment. Aside from whether such a fence would effectively reduce injury or be "practicable" (a requirement of section -3a), defendant argued that the absence of a stronger fence was still related to the location of fencing and therefore not actionable because of subsection -3b(3).
The trial judge rejected defendant's argument when he denied its motions. He interpreted "man-made hazards" comprehensively to include the design of the trail, which directed toboggans, known to be difficult if not impossible to control, over the edge of the twenty-foot embankment and down to the parking lot and light pole. As he understood the Legislature's intent, the requirement that operators "remove ... man-made hazards" was broad enough to include warning people not to use the trail for tobogganing. The judge instructed the jury that "remove" not only means "to ... uproot" but also means "to eliminate or reduce or obviate." This left the jury free to decide whether the hazard of falling over the edge of the embankment could be removed by warnings. We agree with the trial judge.
An obvious man-made hazard, as contemplated in N.J.S.A. 5:13-3a(3), is a man-made danger, obvious to an operator, that is not an inherent risk of using a "ski area." A ski area is defined in part by N.J.S.A. 5:13-2b as real property "utilized for skiing, operating toboggans, sleds, or similar vehicles during the skiing season." Being borne off an embankment after reaching the bottom of a trail is not an inherent risk of tobogganing.
Where physical removal of a hazard is not possible, reasonable warnings of the hazard may constitute its practicable removal. The Statute impliedly contemplates that an operator at least has a duty to post suitable warnings of danger. It will be recalled that N.J.S.A. 5:13-5 expressly charges skiers with the reciprocal duty "to heed all posted warnings."
Defendant argues alternatively that even if plaintiffs may recover under the Ski Statute, the Statute does not apply to trespassers. We already suggested that even at common law, *318 defendant may owe plaintiffs a duty of reasonable care because their presence on the lighted trail was reasonably foreseeable, the risk of grave injury was great and the duty of care was not delegable. We find nothing in the statute that suggests that the Legislature meant to supplant the common law in that respect. The Statute does not exempt trespassers from the definition of skiers to whom operators have a limited responsibility. We quote the N.J.S.A. 5:13-2c definition in full:
"Skier" means a person utilizing the ski area for recreational purposes such as skiing or operating toboggans, sleds or similar vehicles, and including anyone accompanying the person. Skier also includes any person in such ski area who is an invitee, whether or not said person pays consideration.
[Emphasis added.]
Plaintiffs were not merely "in" the ski area; they were "utilizing the ski area for recreational purposes such as ... operating toboggans." They were therefore skiers entitled to recover under principles of comparative negligence if defendant violated any of its limited statutory responsibilities.
Our understanding of the Legislature's intent is fortified by a change in the Assembly bill before it became the Statute. The bill originally contained a section that read:
No operator shall be liable to any person who is a trespasser, which shall include, but not be limited to, persons using the facilities who fail, when required to do so, to pay lift fees or other fees required in connection with the use of these facilities. The operator shall be liable to skiers and others only as specified in this section.
[A. 1650, 198th Leg., 1st Sess. § 3(c) (1978).]
That provision was deleted before the Statute was adopted. The Statement accompanying the final version of the bill stated in part, "The complete removal of liability on the part of a ski area operator to trespassers would be eliminated." Assembly Judiciary, Law, Public Safety and Defense Committee Statement to Assembly No. 1650 (November 20, 1978).
The two remaining arguments that we will briefly address are that the motion judge erroneously granted partial summary judgments to Maurizzi and to Carmelitano. The motions were properly granted.
*319 There was no evidence presented in opposition to Maurizzi's motion that he authorized plaintiffs to use his toboggan, which he had stored in his home. There was no evidence that a toboggan is so inherently dangerous that Maurizzi should have secured it from use by adults. There was no evidence that Maurizzi knew that using the toboggan on the Bunny Buster trail would be especially dangerous.
As to Carmelitano, although there was evidence, presented in opposition to her motion, that some members of the group drank beer at the condominium before the accident, there was no evidence that Carmelitano served the beer, much less that she served it to anyone who was visibly intoxicated. Indeed, there was no evidence that beer-drinking was a cause of the accident. See Gustavson v. Gaynor, 206 N.J. Super. 540, 503 A.2d 340 (App.Div. 1985), certif. denied, 103 N.J. 476, 511 A.2d 655 (1986).
We are satisfied from a careful reading of this record that the remaining issues that defendant has raised in its brief are clearly without merit and therefore require no discussion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] N.J.S.A. 5:13-2c defines "skier" to include "a person utilizing the ski area for recreational purposes such as ... operating toboggans."
[2] N.J.S.A. 5:13-2a defines "operator" to include "a person... who ... manages ... the operation of an area where individuals come to ... operate ... toboggans."