823 A.2d 101 (2003)
360 N.J. Super. 395
Michael MURRAY, Plaintiff,
v.
GREAT GORGE RESORT, INC., Improperly pled as Mountain Creek, et al., Defendant.
Superior Court of New Jersey, Law Division, Sussex County.
Decided January 10, 2003.
*102 Todd I. Siegel, Teaneck, for plaintiff (Siegel & Siegel, attorneys).
Christopher J. McCarthy, Somerville, for defendant (Robinson, Burns & McCarthy, attorneys).
GRAVES, J.S.C.
Plaintiff was injured by a fall while snowboarding on a designated ski trail at defendant's ski area. He was a paying customer using the Mountain Creek ski slopes for recreational purposes. The accident occurred when plaintiff went over a rise on the trail and suddenly encountered a large area of dirt and rocks that was devoid of any snow or ice cover. Plaintiff's snowboard came to an abrupt stop and he was thrown forward striking the ground.
*103 Defendant, relying on the New Jersey Ski Statute, N.J.S.A. 5:13-1 to -11 (Ski Statute), seeks summary judgment claiming that plaintiff's injuries resulted solely from an inherent risk of snowboarding. The evidentiary materials submitted, however, are not so "one-sided" that defendant is entitled to prevail as a matter of law. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 539-40, 666 A.2d 146 (1995).
There are only a few reported decisions that consider the scope and application of the Ski Statute. None of the reported cases have involved individuals who were snowboarding. The Ski Statute defines "skier" as "a person utilizing the ski area for recreational purposes such as skiing or operating toboggans, sleds, or similar vehicles, and including anyone accompanying the person." N.J.S.A. 5:13-2b. "New Jersey expressly limits the class of persons whose relationship is controlled by the Ski Statute to the `skier' who is on the land of another to practice a winter sport, and the `operator' who accepts payment for the privilege of practicing the sport in question." Brett v. Great Am. Recreation, 144 N.J. 479, 498, 677 A.2d 705 (1996).
Some ski liability laws make specific reference to snowboarding. For example, "skier" has been defined as "any person present in a ski area for the purpose of engaging in the sport of skiing, nordic, freestyle, or other types of ski jumping, and snowboarding." Utah Code Ann. § 78-27-52. Snowboarding is not specifically included in our Ski Statute. Where a statute does not specifically address an issue, the court's "task is to discern the intent of the legislature not only from the terms of the [statute], but also from its structure, history, and purpose." Fiore v. Consolidated Freightways, 140 N.J. 452, 471, 659 A.2d 436 (1995). "Furtherance of legislative purpose is the key to the interpretation of any statute." GE Solid State, Inc. v. Director, Div. of Tax., 132 N.J. 298, 308, 625 A.2d 468 (1993). Our legislature has determined that "the allocation of the risks and costs of skiing are an important matter of public policy." N.J.S.A. 5:13-1a. Consequently, "The purpose of [the Ski Statute] is to make explicit a policy of this State which clearly defines the responsibility of ski area operators and skiers ...." N.J.S.A. 5:13-1b.
In this case, plaintiff paid for the privilege to enjoy snowboarding on defendant's ski slopes and trails and he was exposed to the identical risks as traditional down-hill skiers. It would frustrate, rather than promote, the underlying goals of the Ski Statute to exclude snowboarding from the Ski Statute. Thus, snowboarders are governed by the Ski Statute. Accord Shukoski v. Indianhead Mountain Resort, Inc., 166 F.3d 848 (6th Cir.1999) (snowboarder was "skier" covered by provisions of Michigan's Ski Area Safety Act based on definition of "skiers" utilized by the American National Standards Institute, which includes people using snowboards and handicappers using ski devices); cf. Calhanas v. South Amboy Roller Rink, 292 N.J.Super. 513, 523 n. 2, 679 A.2d 185 (App.Div. 1996) (common sense suggests the legislature did not intend to draw any distinction between individuals wearing rollerblades or in-line skates and standard roller skates when defining "roller skater").
Defendant has not presented any depositions, affidavits, answers to interrogatories, or admissions to contradict or challenge plaintiff's version of the accident. Rather, defendant claims the evidence only establishes that the accident resulted from an inherent risk of snowboarding and that such risks are assumed by skiers and snowboarders as a matter of law.
*104 At the time of the accident, plaintiff was an experienced skier and snowboarder. He had received training in snowboarding and snowboard safety in Switzerland and he was employed as a certified snowboard instructor at Okemo Mountain Ski Resort in Vermont during the previous winter season. At his deposition, plaintiff testified that prior to his accident he had skied approximately 200 times and also snowboarded over 200 times. When asked to describe his level of skill on the day of the accident, plaintiff testified: "Expert. Definitely expert."
Plaintiff snowboarded at Mountain Creek on February 4, 1999 and February 5, 1999. On February 4, 1999, the day before the accident, plaintiff observed that the ski trail where the accident took place was being used for mountain biking and he described the trail as "solid dirt from top to bottom." The weather was clear and cold on both days and there was no natural snow on either day.
When plaintiff arrived at the ski area on February 5, 1999, he noticed that the subject trail was posted "open" for snowboarders. He "presumed that the subject trail was covered with artificial snow since it was a bike trail the day before." After purchasing a lift ticket, plaintiff rode a chair lift to the top of the mountain. His description of the accident is as follows:
I exited the chair lift and snowboarded slowly on snow toward the subject trail .... I snowboarded approximately 75 feet and went over a rise at the center of the entrance of the trail. There were no ropes or signs indicating that the trail was closed. There was nothing posted indicating that the entire right half portion of the trail was a mass of exposed dirt and rocks.
As soon as I snowboarded over the rise, there was suddenly no snow whatsoever on the area of the trail I was on. My snowboard traveled over dirt and rocks causing my body to fall forward onto my shoulder.
I did not and could not observe the conditions of dirt and rock on the trail until I was on top of it.
According to plaintiff, the area of dirt and rocks was located within the boundaries of an open trail. He described the area as approximately 30 feet wide and several hundred feet long. Plaintiff testified that the condition of the trail where he fell was not something he would normally expect to encounter and it was not a common and inherent risk of snowboarding.
In his complaint plaintiff alleges that Mountain Creek failed to exercise due care to keep its ski area reasonably safe. In addition, he claims that defendant failed to inspect the trail, failed to post warnings concerning unsafe snowboard conditions, failed to close an unsafe trail, failed to provide adequate man-made snow coverage, failed to mark off a large exposed area of dirt and rocks in the middle of a trail, and allowed a dangerous, hazardous and trap-like condition to exist.
The Ski Statute refers to the assumption of risk defense as follows:
A skier is deemed to have knowledge of and to assume the inherent risks of skiing, operating toboggans, sleds or similar vehicles created by weather conditions, conditions of snow, trails, slopes, other skiers, and all other inherent conditions. Each skier is assumed to know the range of his ability, and it shall be the duty of each skier to conduct himself within the limits of such ability, to maintain control of his speed and course at all times while skiing, to heed all posted warnings and to refrain from acting in a manner which may cause or contribute to the injury of himself or others. [N.J.S.A. 5:13-5]
*105 The Ski Statute does not immunize ski area operators from civil liability when injuries result from an inherent risk of the sport of skiing or snowboarding. "[A] skier is not barred from suing an operator based upon assumed risks or for injuries to which he contributed if the operator violated his duties or responsibilities under the bill. In [such a] case, the provisions of the comparative negligence law would apply." Assembly Judiciary, Law, Public Safety and Defense Committee, Statement to Assembly, No. 1650 (Nov. 20, 1978). Thus, even if plaintiff assumed an inherent risk of snowboarding, a jury must still analyze whether defendant violated any of its statutory duties and responsibilities.
The assumption of risk set forth in section 5 shall be a complete bar of suit and shall serve as a complete defense to a suit against an operator by a skier for injuries resulting from the assumed risks, notwithstanding the provisions of P.L.1973, c. 146 (C. 2A:15-5-5.1 et seq.), relating to comparative negligence, unless an operator has violated his duties or responsibilities under this act, in which case the provisions of P.L.1973, c. 146 shall apply. (footnote omitted) (emphasis added). [N.J.S.A. 5:13-6]
"If the factfinder finds that the injuries were proximately caused by the ski operator's violation of one or more of its statutory responsibilities, the skier is entitled to recover under principles of comparative negligence." Brett v. Great Am. Recreation, 279 N.J.Super. 306, 315, 652 A.2d 774 (App.Div.), aff'd, 144 N.J. 479, 677 A.2d 705 (1996).
Ski area operators are subject to the following statutory duties and responsibilities:
It shall be the responsibility of the operator to the extent practicable, to:
(1) Establish and post a system generally identifying slopes and trails and designating relative degrees of difficulty thereof; and to make generally available to skiers information in the form of trail maps or trail reports.
(2) Make generally available either by oral or written report or otherwise, information concerning the daily conditions of the slopes and trails.
(3) Remove as soon as practicable obvious, man-made hazards.
[N.J.S.A. 5:13-3a.]
Defendant contends it is not required to inspect for dangerous or hazardous conditions or to warn of such conditions because N.J.S.A. 5:13-3a does not specifically enumerate those duties.
The people of the State have spoken through their elected Legislature with regard to the nature and extent of the duties of a ski area operator. The duties argued by plaintiff do not exist and cannot be created without an express statutory enactment. Clearly, there is no duty to warn of or prevent dirt areas, make snow or close trails. Thus, there can be no liability where there is no duty.
In response, plaintiff notes that if defendant is insulated from liability because the duty to inspect is not a specifically delineated responsibility under the Ski Statute, then "defendant would have no motivation, no responsibility and no accountability for inspecting trails, closing trails, or posting warnings."
A ski operator's duty to warn of dangerous conditions was addressed by the Appellate Division in Brett, supra, 279 N.J.Super. 306, 652 A.2d 774. The Ski Statute specifically requires ski area operators to post signs and make available to skiers information on the difficulty and conditions of ski trails. N.J.S.A. 5:13-3a. In addition, the Ski Statute obligates skiers *106 to "heed all posted warnings." N.J.S.A. 5:13-5. Therefore, the Appellate Division reasoned: "Where physical removal of a hazard is not possible, reasonable warnings of the hazard may constitute its practicable removal. The Statute impliedly contemplates that an operator at least has a duty to post suitable warnings of danger." Brett, supra, at 317, 652 A.2d 774.
Similarly, the Ski Statute "impliedly contemplates" that a ski operator will inspect its slopes and trails, at least on a daily basis, to ascertain the existence of dangerous or hazardous conditions. A duty to inspect is necessarily implicit in the Ski Statute because, absent an inspection of its property, a ski area operator cannot satisfy its statutory responsibilities to post signs and make available information concerning the daily conditions of its slopes and trails. An inspection is also essential in order for defendant to satisfy its implied duty to "post suitable warnings of danger." Ibid.
In the event an inspection reveals a dangerous or unsafe condition, defendant has a responsibility to eliminate or reduce the risk of harm to the extent it is practicable to do so. "[T]he operator's duty extends as well to reducing the danger through safer alternatives, warning devices or other safety measures ...." Brough v. Hidden Valley, Inc., 312 N.J.Super. 139, 147, 711 A.2d 382 (App. Div.1998) (citing Brett, supra, 144 N.J. at 507, 677 A.2d 705). As evidenced by defendant's implied responsibilities, the duties enumerated in the Ski Statute are illustrative, not exhaustive. "To deem the list of ski area operators' duties and responsibilities set forth in N.J.S.A. 5:13-3a as being exhaustive would be patently inconsistent with the express language contained in N.J.S.A. 5:13-5 and N.J.S.A. 5:13-1b." Reisman v. Great Am. Recreation, 266 N.J.Super. 87, 94, 628 A.2d 801 (App.Div.), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993).
"[T]he Ski Statute exists primarily for the purpose of providing ski area operators with protection against liability based on risks `which are essentially impractical or impossible for [them] to eliminate'." Id. at 95, 628 A.2d 801 (quoting N.J.S.A. 5:13-1b). "In the skiing context, an inherent risk is one that cannot be removed through the exercise of due care if the sport is to be enjoyed." Brett, supra, 144 N.J. at 499, 677 A.2d 705. "A danger that may feasibly be removed, however, is not an inherent danger." Id. at 500-501, 677 A.2d 705; see, e.g., Pietruska v. Craigmeur Ski Area, 259 N.J.Super. 532, 537, 614 A.2d 639 (Law Div.1992) ("Improper operation of a ski lift is not an inherent risk of skiing since, with due care, it can be eliminated.").
In addition to inherent risks, there are also man-made hazards. "The placement of ski-lift towers, the use of artificial snow, and the layout of the trails are all man-made contributions to the skiing environment." Brett, supra, 144 N.J. at 500, 677 A.2d 705. In light of the available evidence, including the size and location of the area of dirt and rocks, together with the condition of the trail the day before the accident and the lack of natural snow, a reasonable jury may conclude that plaintiff's accident was caused by inadequate artificial snowmaking, a non-inherent man-made hazard that defendant was under a duty to remove or reduce "as soon as practicable." N.J.S.A. 5:13-3a(3); see Brett, supra, 144 N.J. at 505, 677 A.2d 705 ("[T]he trial court properly left to the jury the question of whether an obvious, man-made hazard existed, given the fact-intensive nature of this issue and its relation to the balancing of fault."); see also Brough, supra, 312 N.J.Super. at 146-47, 711 A.2d 382 (jury to decide if man-made, concrete *107 box located off ski trail was inherent risk that skier must assume or a hazard that ski operator had a duty to remove or reduce).
In view of the foregoing, there are genuine issues for trial. A jury must determine if the dirt area where plaintiff fell was an inherent risk of snowboarding or an obvious, man-made hazard that defendant could have removed, eliminated or reduced. A jury must also determine whether Mountain Creek violated its express or implied statutory duties, thereby entitling plaintiff to recover under principles of comparative negligence, by failing to conduct an inspection, failing to provide information concerning trail conditions and failing to warn of a potential danger. Accordingly, defendant's motion for summary judgment is denied. R. 4:46-2.