IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VINCENT MCCAW; CARLY MCCAW; ANDREW MCCAW,
*Plaintiffs/Appellants*,

*v.*

ARIZONA SNOWBOWL RESORT,
*Defendant/Appellee*.

No. 1 CA-CV 21-0585
FILED 11-22-2022

Appeal from the Superior Court in Coconino County
No.  S0300CV201800634
The Honorable Dan R. Slayton, Judge

**VACATED AND REMANDED**

COUNSEL

Fuller Law Group PC, San Diego, CA
By Craig D. Fuller
*Counsel for Plaintiffs/Appellants*

Jones Skelton & Hochuli, Phoenix
By Jack Klecan, Kristin W. Basha, Eileen Dennis GilBride,
Elizabeth B.N. Garcia,
*Co-Counsel for Defendant/Appellee*

McClaugherty and Silver PC, Santa Fe, NM
By Joe L. McClaugherty, *admitted pro hac vice*
*Co-Counsel for Defendant/Appellee*

---

**OPINION**

Judge Jennifer B. Campbell delivered the opinion of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Vincent, Carly, and Andrew McCaw (the McCaws) appeal from the superior court's ruling granting summary judgment in favor of Arizona Snowbowl Resort (Snowbowl). Because the Arizona Ski Safety Act (the Act) does not shield a ski area operator from liability for injuries arising from ski lift accidents, it does not bar the McCaws' negligence claims. Accordingly, we vacate the superior court's summary judgment ruling and remand for proceedings consistent with this opinion.

**BACKGROUND**

¶2        In December 2016, Vincent and his two children, 17-year-old Andrew and 14-year-old Carly, visited Snowbowl for a day of skiing and snowboarding. While they waited to load the ski chair lift, Andrew's snowboard crossed Carly's skis, causing her skis to "[go] out [from] underneath her." Unable to steady herself and sit properly, Carly's arms caught the approaching lift chair, leaving her "in a very severe slouch" position. With the skis and snowboard still entangled and believing she "would be able to get back on" properly, Carly did not attempt to maneuver away from the chair as it proceeded five to ten feet along a cable wire before beginning its ascent.

¶3        Upon realizing Carly's precarious position, Vincent and Andrew grabbed her arms, turned toward the ski lift operator, and yelled for him to "stop" the ski lift. As other ski lift passengers became aware of the situation, they also began shouting at the operator for help. By that time, however, the operator was attending to other skiers in the load line and could not hear the passengers' pleas over the sound of blaring music. Andrew and Vincent tried to hold onto Carly, but as she began to slip from their grasp, they determined they would have to let her go. When their chair traveled over powdered snow, Vincent and Andrew dropped Carly, hoping the unpacked snow would provide a safe landing. Carly fell over 34 feet but "popped right up" and waved to Vincent and Andrew upon landing.

¶4            After the ski lift incident, the McCaws resumed their normal lives and activities. However, Carly, Vincent, and Andrew began having recurring nightmares.

¶5            Alleging the ski lift incident caused them "emotional distress" and "psychiatric injuries," the McCaws filed a negligence complaint against Snowbowl. Snowbowl answered, denying liability, and moved for summary judgment. Specifically, Snowbowl asserted that it "owed no duty" to the McCaws under the Act. Snowbowl also claimed that the McCaws failed to present evidence they sustained emotional distress "result[ing] in the kind of bodily manifestation of physical injury or illness cognizable under Arizona law."

¶6            After oral argument on the motion, the superior court granted summary judgment in favor of Snowbowl, agreeing that the ski area operator owed no duty to the McCaws. The superior court found that the Act "comprehensively defines the duties of skiers and the duties of a ski area operator." Construing the Act's provisions, the court determined that "the duty to safely (1) load, (2) ride, and (3) unload a chair lift is the skier's exclusive duty and not a duty of the ski area operator." Without ruling on Snowbowl's alternative argument regarding insufficient evidence of cognizable damages, the superior court dismissed the matter with prejudice.[1]

¶7            Over the McCaws' objection, the superior court awarded Snowbowl its requested costs and entered a final judgment in its favor. The McCaws timely appealed.

## DISCUSSION

¶8            The McCaws challenge the superior court's summary judgment ruling, contending Snowbowl owed them a duty to monitor the ski lift and promptly intercede when the misloading occurred. Disagreeing with the superior court's determination that the Act assigns all duties related to ski lift safety "exclusively" to skiers, the McCaws argue that the Act provides ski area operators the affirmative defenses of contributory negligence and assumption of the risk. As a corollary, and for the first time on appeal, the McCaws assert that the superior court's ruling violated Article 18, Section 5, of the Arizona Constitution by infringing on their right

---

[1]            Contrary to Snowbowl's assertion, the superior court did not enter a "ruling" regarding the legal sufficiency of the McCaws' damages evidence.

to have a jury determine the existence or extent of their contributory negligence and assumption of risk.

**¶9**     In reviewing a grant of summary judgment, we view the facts and the reasonable inferences drawn from those facts in the light most favorable to the non-moving party and affirm "if the evidence produced in support of the defense or claim has so little probative value that no reasonable person could find for its proponent." *State Comp. Fund v. Yellow Cab Co. of Phx.*, 197 Ariz. 120, 122, ¶ 5 (App. 1999). We review de novo the superior court's application of the law. *Id.*; *see also* Ariz. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.").

**¶10**     "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). "Whether the defendant owes the plaintiff a duty of care is a threshold issue[,]" subject to our de novo review. *Id.* at ¶¶ 9, 11; *Guerra v. State*, 237 Ariz. 183, 185, ¶ 7 (2015). To survive a motion for summary judgment, the plaintiff must show a duty exists; "absent some duty, an action for negligence cannot be maintained." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563, ¶ 2 (2018); *Gipson*, 214 Ariz. at 143, ¶ 11.

**¶11**     A duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson*, 214 Ariz. at 143, ¶ 10 (quotation and citation omitted). "The existence of a duty of care is a distinct issue from whether the standard of care has been met in a particular case." *Id.*; *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 355 (1985) (noting the existence of a duty must not "be confused with details of the standard of conduct" required to satisfy the duty); *see also Stephens v. Bashas' Inc.*, 186 Ariz. 427, 431 (App. 1996) (explaining that the existence of a duty must be determined "on the basis of the parties' relationship, not on the details of their conduct").

**¶12**     "As a legal matter, the issue of duty involves generalizations about categories of cases." *Gipson*, 214 Ariz. at 143, ¶ 10. "Thus, a conclusion that no duty exists is equivalent to a rule that, for certain categories of cases, defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct." *Id.* at 143-44, ¶ 11.

**¶13**        "Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant," as well as from public policy considerations. *Id.* at 145, ¶¶ 18, 23. "Foreseeability of harm is not a relevant consideration in determining the threshold legal issue of whether a duty exists, nor are case-specific facts." *Guerra*, 237 Ariz. at 185, ¶ 8; *see also Quiroz*, 243 Ariz. at 563, ¶ 2; *Gipson*, 214 Ariz. at 144, ¶ 15.

**¶14**        In this case, the McCaws assert that Snowbowl owed them a duty of care based on their special relationship and status as Snowbowl's business invitees. "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 143 (1982) (internal quotations and citations omitted). Under the common law, a business owner has a duty to both maintain its premises in a reasonably safe condition and conduct its business in a reasonably safe manner to avoid causing injury to invitees. *Stephens*, 186 Ariz. at 430-31; *see also* Restatement (Second) of Torts § 343 cmt. b (1965) (stating that "an invitee enters [land] upon an implied representation or assurance that [it] has been prepared and made ready and safe for his reception").

**¶15**        It is undisputed that the McCaws were Snowbowl's business invitees at the time of the ski lift incident. The question is whether the Act abrogates common-law negligence principles, relieving ski area operators of a duty of care they would otherwise owe to ski lift passengers.

**¶16**        "When interpreting a statute, our primary goal is to give effect to the legislature's intent." *Wilks v. Manobianco*, 237 Ariz. 443, 446, ¶ 8 (2015) (quotation and citation omitted). To derive that intent, we consider the "statutory language in view of the entire text, considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019). "If the language is clear and unambiguous," we follow the text as written and "need not resort to other methods of statutory construction." *Indus. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77, ¶ 7 (App. 2009). Only if a statute is ambiguous will we examine "the statute's history, context, consequences, and purpose." *Wilks*, 237 Ariz. at 446, ¶ 8. When statutes relate to the same subject or general purpose, they "should be read in connection with, or should be construed with other related statutes, as though they constituted one law." *Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 10 (App. 2004) (quotation and citation omitted). "Further, each word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant." *Id.*

¶17          "If the legislature seeks to preempt a cause of action[,] . . . the law's text or at least the legislative record should say so explicitly." *Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 182, ¶ 10 (2014) (quotation and citation omitted). "Absent a clear manifestation of legislative intent to displace a common-law cause of action, we interpret statutes with every intendment in favor of consistency with the common law." *Id.* (quotation and citation omitted); *see also* A.R.S. § 1-201 ("Adoption of common law; exceptions"). To be clear, "it is not the function of the courts to rewrite statutes," and we will not "interpret a statute in favor of denial or preemption of tort claims - even those that are not or may not be constitutionally protected - if there is any reasonable doubt about the legislature's intent." *Id.* at ¶¶ 10-11 (quotations and citations omitted).

¶18          In 1997, the legislature enacted the Act, A.R.S. §§ 5-701 through -707, which regulates ski areas and delineates the responsibilities of both operators and skiers. Section 5-702 requires ski area operators to "prominently display signs" outlining "pertinent information for the protection and instruction" of ski lift passengers. A.R.S. § 5-702(A), (B). As relevant here, ski area operators must post a sign at the loading point of each ski lift admonishing "any person not familiar with the operation" of the ski lift to "*ask ski area personnel for assistance and instruction.*" A.R.S. § 5-702(B)(1) (emphasis added). In addition, ski area operators must place a sign on the interior of each ski lift chair "*that gives instructions for procedures in the case of emergencies.*" A.R.S. § 5-702(B)(3) (emphasis added). Similarly, A.R.S. § 5-703 requires ski area operators to display signs containing "pertinent information for the protection and instruction of skiers." Among the required postings, ski area operators must display signs indicating the difficulty level of each slope and trail. A.R.S. § 5-703(B), (C). Ski area operators must also clearly mark the ski area boundaries and either place a warning sign or rope off closed areas. A.R.S. § 5-703(D), (F). Apart from posting signs at designated areas, ski area operators must maintain certain equipment, A.R.S. § 5-704, and mark all ski lift tickets and passes with the following admonition:

> Warning: Under Arizona law, a skier accepts the risk of any injury to person or property resulting from any of the inherent dangers and risks of skiing, including changing weather conditions, existing and changing snow surface conditions, surface or subsurface conditions, whether marked or unmarked, collisions with natural or man-made objects, whether marked or unmarked and the failure of skiers to ski within their own abilities.

A.R.S. § 5-703(G). This mandatory warning derives from A.R.S. § 5-701(5)'s definition of "[i]nherent dangers and risks of skiing":

> [T]hose dangers or conditions that are an integral part of the sport of skiing, *excluding acts of ordinary or gross negligence, or reckless or intentional conduct on the part of the ski area operator*. Inherent dangers and risks of skiing include:
>
> (a) Changing weather conditions.
>
> (b) Existing and changing snow surface conditions, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up and machine-made snow.
>
> (c) Surface or subsurface conditions, whether marked or unmarked, such as bare spots, forest growth, rocks, stumps, streambeds, trees or other natural objects.
>
> (d) Impacts with lift towers, signs, posts, fences or other enclosures, hydrants, water pipes or other man-made structures and their components, whether marked or unmarked.
>
> (e) Variations in steepness or terrain, including roads, catwalks and other terrain modifications, whether natural or as a result of slope design, snowmaking or grooming operations.
>
> (f) Collisions with other skiers.
>
> (g) The failure of skiers to ski within their own abilities.

(Emphasis added.)

¶**19**      In turn, A.R.S. § 5-705 outlines the "duties of a skier" for purposes of "any civil action brought by a skier against a ski area operator." First and foremost, A.R.S. § 5-705(1) provides that "[a] skier *expressly accepts the total risk of and all legal responsibility for* injury to person or property resulting from any of the *inherent dangers and risks of skiing*." (Emphasis added.) Specific to this appeal, subsection (2) states: "Before using a chair lift . . . a skier shall have the knowledge and ability to safely load, ride and unload from the device," and subsection (5) states: "A skier shall heed all posted information, signs and other warnings and shall refrain from acting in a manner that may cause or contribute to the injury of the skier or other

7

persons or property." A.R.S. § 5-705(2), (5). The remaining enumerated duties pertain to skiers' conduct on slopes and trails. A.R.S. § 5-702(3), (4), (6)-(12).

¶20        Reading these related provisions together, the legislature adopted an analytical framework under which skiers *assume all legal responsibility* for injuries *arising out of the inherent dangers of skiing* while ski area operators *retain common-law liability* for both ordinary and gross *negligence*. As part of this framework, the legislature also imposed duties on ski area operators and skiers. Sections 5-702 to -704 impose certain posting and equipment maintenance duties on ski area operators, the breach of which constitutes negligence per se. Likewise, A.R.S. § 5-705 imposes certain responsibilities on skiers, the violation of which constitutes a defense to a civil action. This reading is consistent with the plain language of the Act.

¶21        While no previous Arizona case has interpreted the Act, courts in numerous other jurisdictions have construed similar ski safety acts enacted by their legislatures. Although not controlling, we find the two-tier assumption of risk analysis conceptualized in many of these out-of-state cases persuasive.

¶22        Under the first tier, or "primary assumption of risk," a ski area operator owes no duty to a skier as a matter of law, and a negligence action cannot stand. *Van Dyke v. S.K.I. Ltd.*, 79 Cal. Rptr. 2d 775, 778 (Cal. Ct. App. 1998); *see also Lopez v. Ski Apache Resort*, 836 P.2d 648, 653 (N.M. Ct. App. 1992) ("[P]rimary assumption of the risk is an alternative expression for the proposition that the defendant . . . owed no duty to the plaintiff."). The primary assumption of the risk principle applies *only* when the plaintiff has engaged in a sport, or other activity regarded as dangerous and "the injury suffered arises from *an inherent risk* in the activity." *Van Dyke*, 79 Cal. Rptr. 2d at 778 (emphasis added); *see also Jagger v. Mohawk Mountain Ski Area, Inc.*, 849 A.2d 813, 828 (Conn. 2004) ("[F]or inherent hazards, ski area operators owe skiers no duty of care and skiers assume the risk of those hazards in the primary sense."); *Murray v. Great Gorge Resort, Inc.*, 823 A.2d 101, 106 (N.J. Super. Ct. Law Div. 2003) ("In the skiing context, an inherent risk is one that cannot be removed through the exercise of due care if the sport is to be enjoyed." (citation omitted)); *Horvath v. Ish*, 979 N.E.2d 1246, 1251 (Ohio 2012) ("To be covered under the [primary-assumption-of-the-risk] doctrine, the risk must be one that is so inherent to the sport or activity that it cannot be eliminated." (citation omitted)). Determining what constitutes an "inherent risk" presents a legal question for the court. *Van Dyke*, 79 Cal. Rptr. 2d at 778.

¶23 In contrast, under the secondary assumption of the risk tier, both the ski area operator and the skier have reciprocal responsibilities. *See Horvath*, 979 N.E.2d at 1251 (determining the duties of operators and skiers "are reciprocal," with "skiers ow[ing] ski-area operators certain enumerated responsibilities"); *see also Jagger*, 849 A.2d at 828 ("For those hazards which are not an innate part of the sport of skiing, or over which an operator can act reasonably to eliminate or minimize the potential for harm, operators owe skiers a duty of reasonable care."). Whether the parties breached their respective duties of care, and the comparative negligence of the parties, if any, present questions of fact for a jury. *See Jagger*, 849 A.2d at 829.

¶24 Applied to the Act, the primary assumption of risk tier governs any injury arising from the "inherent dangers and risks of skiing," as statutorily defined. A.R.S. §§ 5-705(1), -701(5). Because a ski area operator owes no duty to eliminate or guard against risks inherent to skiing, it is only liable for a plaintiff's injuries arising out of the dangers inherent to skiing if it breached its posting and equipment requirements as delineated in A.R.S. §§ 5-702 through -704, thereby contributing to the injuries sustained. "This is a rational solution for limiting ski area operators' liability and promoting safety." *Grieb v. Alpine Valley Ski Area, Inc.*, 400 N.W.2d 653, 656 (Mich. Ct. App. 1986); *see also Gipson*, 214 Ariz. at 146, ¶ 29 ("When a court or legislature adopts a no-duty rule, it generally does so based on concerns that potential liability would chill socially desirable conduct or otherwise have adverse effects.").

¶25 When an injury does not arise out of a risk inherent to skiing, common-law negligence principles apply, including a duty of care owed to business invitees. *See Horvath*, 979 N.E.2d at 1251. Because an operational failure with a ski lift is not an "inherent risk" of skiing, as that term is statutorily defined, the Act does not immunize a ski area operator from liability for ski lift negligence. *See Pietruska v. Craigmeur Ski Area*, 614 A.2d 639, 641 (N.J. Super. Ct. Law Div. 1992) ("Improper operation of a ski lift is not an inherent risk of skiing since, with due care, it can be eliminated. While the [ski safety act] imposes certain duties on a skier who uses a lift, it does not identify proper usage thereof as an inherent risk."). This, too, is a rational solution because, unlike the slopes and trails, where a skier has "freedom of movement and choice," a skier has no control over the movement of a ski lift. *See Mannhard v. Clear Creek Skiing Corp.*, 682 P.2d 64, 66 (Colo. Ct. App. 1983).

¶26 In sum, the Act provides a liability framework that generally maintains common-law negligence principles while immunizing ski area

operators from lawsuits for injuries arising from the inherent risks of skiing. By its clear terms, the Act imposes a duty on skiers to have the knowledge and ability to safely load, ride, and unload from a ski lift, but it does not identify passage on a ski lift as an inherent risk of skiing. Indeed, other provisions in the Act demonstrate that a ski area operator owes a duty of care to ski lift passengers. For example, A.R.S. § 5-702(B)(1) requires ski area operators to assist inexperienced passengers in loading ski lifts, and A.R.S. § 5-702(B)(3) requires ski lift operators to have predetermined emergency procedures in place in the event of a ski lift mishap. While the Act charges a ski lift passenger with a duty of care to safely ride a ski lift,[2] it does not relieve a ski area operator of the common-law duty to maintain and operate ski lifts with care for its business invitees. Had the legislature intended to foreclose a passenger from bringing a negligence claim against a ski area operator for an injury arising out of passage on a ski lift, it was required to do so by expressly abrogating the common law and including passage on a ski lift within the enumerated inherent risks of skiing. *Young v. Beck*, 227 Ariz. 1, 4, ¶ 13 (2011) ("We generally do not find that a statute changes common law unless the legislature clearly and plainly manifests an intent to have the statute do so." (cleaned up)). Absent express preemption language, we will not construe the Act as barring common-law negligence claims. *See Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 72 (Colo. 1998) ("A ski lift operator must exercise the highest degree of care commensurate with the lift's practical operation . . . ."); *D'Amico v. Great Am. Recreation, Inc.*, 627 A.2d 1164, 1166-67 (N.J. Super. Ct. Law Div. 1992) (concluding ski lift operators "should be held to the highest standard of care" because a "skier has no ability to stop the cable from moving" and cannot "exit the chair once it has begun its ascent").

¶27        Having determined that ski area operators owe a duty of care to maintain and operate ski lifts safely and that passengers owe a duty of care to safely board, ride, and disembark ski lifts, whether Snowbowl or the McCaws, or both, *breached* their respective duties presents a question of

---

[2]        The McCaws posit that A.R.S. § 5-705(2) requires ski lift passengers only to *possess* the requisite knowledge to safely ride a ski lift, without requiring them to conform to that knowledge for both their protection and the safety of others. Stated differently, the McCaws argue that ski lift passengers have no duty to safely ride ski lifts under the Act. We reject this construction as nonsensical. *See Walgreen Ariz. Drug Co. v. Ariz. Dep't of Revenue*, 209 Ariz. 71, 73, ¶ 12 (App. 2004) (explaining courts "interpret statutes to give them a fair and sensible meaning and to avoid absurd results").

fact.[3] *See Wilks*, 237 Ariz. at 447, ¶ 15. Therefore, the superior court erred by granting summary judgment in Snowbowl's favor on the basis that it owed no duty as a matter of law.[4]

**CONCLUSION**

¶28 For the foregoing reasons, we vacate the superior court's summary judgment ruling and award of costs and remand for proceedings consistent with this opinion. In their briefing, the McCaws requested their attorneys' fees incurred on appeal, failing to cite any supporting legal authority, but withdrew their request at oral argument. We award the McCaws their costs incurred on appeal, conditioned upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: JT

---

[3] In this case, the extent of the plaintiffs' contributory negligence, if any, must be determined individually.

[4] Given our resolution of the duty issue, we need not address the McCaws' constitutional claim.