Lundberg Stratton, J.
I. Introduction
{¶ 1} The issue before the court is what duty or standard of care is owed by one skier to another for purposes of determining tort liability. We hold that skiers assume the ordinary risks of skiing, which include collisions with other skiers, and cannot recover for an injury unless it can be shown that the other skier’s actions were reckless or intentional.
{¶ 2} The court of appeals reversed the trial court’s grant of summary judgment in favor of Ish and remanded the case to the trial court to determine whether Ish had violated any duties under R.C. 4169.08 or 4169.09 and if he did, whether negligence per se applied. The court of appeals also held that a genuine issue of material fact existed whether Ish was reckless. Horvath v. Ish, 194 Ohio App.3d 8, 2011-Ohio-2239, 954 N.E.2d 196, ¶ 18 (9th Dist.). We agree that there is a genuine issue of material fact, but only as to whether Ish’s actions were more than negligent, that is, whether his actions were reckless or intentional under the common law. Therefore, we affirm the judgment of the court of appeals, albeit on somewhat different grounds, and remand the case to the trial court for proceedings consistent with our opinion.
II. Facts and Procedural History
{¶ 3} On March 6, 2007, Angel Horvath and Eugene Horvath (the couple were married after the accident but before the complaint was filed) were skiing at Boston Mills ski resort. David Ish was snowboarding at Boston Mills on that same date, with his brother, Tyler, and their cousins. In the early evening, Angel and Eugene were skiing down Buttermilk Hill. David, Tyler, and their cousins were snowboarding on the same hill. David and his relatives proceeded through a terrain park[1] and then reentered Buttermilk Hill, where David and Angel collided. Angel was injured in the accident.
*50 {¶ 4} The Horvaths filed a complaint against David Ish and his parents, alleging that David had acted negligently, carelessly, recklessly, willfully, and wantonly in causing the collision with Angel.
{¶ 5} The Ishes filed a motion for summary judgment, arguing that skiers are subject to primary assumption of the risk, which means that a defendant owes no duty of ordinary care to plaintiff. Thus, the Ishes argued that in order to recover, the Horvaths were required to prove that David had acted recklessly or intentionally in causing the collision. The Ishes further asserted that there was no evidence that David’s actions were reckless or intentional.
{¶ 6} In opposing the Ishes’ motion for summary judgment, the Horvaths argued that R.C. 4169.08(C) imposes specific duties on skiers and that breaching those duties is negligence per se. The trial court granted the Ishes’ motion for summary judgment.
{¶ 7} In a two-to-one decision, the court of appeals reversed the judgment of the trial court, stating that “[b]y reading R.C. 4169.08(C) in context with 4169.09, we find that it is evident that the legislature intended that skiers would be liable for injuries caused to others while skiing.” Horvath, 194 Ohio App.3d 8, 2011-Ohio-2239, 954 N.E.2d 196, ¶ 13. The court of appeals remanded the cause to the trial court to determine whether David Ish’s actions violated any of the responsibilities described in R.C. 4169.08(C) and, if so, whether any such violation invoked the doctrine of negligence per se. Id. at ¶ 14.
{¶ 8} This case is before this court pursuant to the acceptance of the Ishes’ discretionary appeal. 129 Ohio St.3d 1503, 2011-Ohio-5358, 955 N.E.2d 386.
III. Analysis
R.C. Chapter 4169
{¶ 9} We begin our analysis by determining whether R.C. 4169.08 and 4169.09 apply to personal-injury litigation between skiers.
{¶ 10} When interpreting a statute, a court’s paramount concern is legislative intent. State ex rel. United States Steel Corp. v. Zaleski, 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. “[T]he intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.” Slingluff v. Weaver, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. However, “[i]n reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body.” State v. Wilson, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997). “A court must examine a statute in its entirety rather than focus on an isolated phrase to determine legislative *51 intent.” Massillon City School Dist. Bd. of Edn. v. Massillon, 104 Ohio St.3d 518, 2004-Ohio-6775, 820 N.E.2d 874, ¶37. See also R.C. 1.42. With this guidance in mind, we examine R.C. Chapter 4169 in its entirety to determine whether R.C. 4169.08 and 4169.09 apply to personal-injury litigation between skiers.
{¶ 11} R.C. 4169.02 established a ski-tramway board that is authorized to create rules under R.C. Chapter 119 relating to “public safety in the construction, maintenance, mechanical operation, and inspection of passenger tramways.”[2] R.C. 4169.03 requires that a tramway must be registered with the board before it can be operated. R.C. 4169.04 provides that tramways must be inspected. R.C. 4169.05 authorizes the board to hear complaints that the construction, maintenance, or mechanical operation of a tramway endangers public safety. R.C. 4169.06 permits a board member to suspend the operation of a tramway if the board determines that an “immediate danger exists.” R.C. 4169.07 provides that ski-area operators are responsible for any tramway they construct and for the maintenance and operation of a passenger tramway in the operator’s ski area. R.C. 4169.07 also states that passengers have certain enumerated responsibilities regarding their use of tramways. R.C. 4169.99 provides that ski-area operators are subject to a monetary fine if they fail to register their tramway with the board, fail to comply with an order from the board, or fail to comply with a rule issued by the board.
{¶ 12} R.C. 4169.08 insulates ski-area operators from liability for injuries that arise from the inherent risks of skiing and otherwise defines certain responsibilities applicable to ski-area operators and ski-area visitors. R.C. 4169.09 addresses the liability of ski-area operators and ski-area visitors for failing to comply with the responsibilities enumerated in R.C. 4169.08(C).
{¶ 13} And finally, R.C. 4169.10 immunizes ski-area operators for damages suffered by a person who was committing a theft at the time the person suffered the loss.
{¶ 14} It is evident that R.C. Chapter 4169, when viewed in its entirety, addresses certain obligations and limitations on liability pertaining to ski-area operators, as well as the relationship between ski-area operators and ski-area visitors. Consequently, neither R.C. 4169.08 nor 4169.09 applies to personal-injury litigation between skiers.
*52 {¶ 15} Our conclusion is confirmed when we examine R.C. 4169.08 and 4169.09 in greater detail. R.C. 4169.08(A)(1) provides that “the general assembly recognizes that skiing as a recreational sport is hazardous to skiers regardless of all feasible safety measures that can be taken. It further recognizes that a skier expressly assumes the risk of and legal responsibility for injury, death, or loss to person or property that results from the inherent risks of skiing.” R.C. 4169.08(A)(1) then provides a nonexhaustive list of conditions (e.g., slush) or objects (e.g., out-of-bounds barriers) that are inherent risks of skiing. R.C. 4169.08(A)(2) and (3) provide that ski-area operators are not liable for the death of or injury to ski-area visitors that occur in a freestyle terrain or tubing park, subject to certain qualifications. Thus, R.C. 4169.08(A) effectively insulates ski-area operators from personal-injury lawsuits that arise from the inherent risks of skiing. See Stone v. Alpine Valley Ski Area, 135 Ohio App.3d 540, 545, 734 N.E.2d 888 (11th Dist.1999); Otterbacher v. Brandywine Ski Ctr., Inc., 9th Dist. No. 14269, 1990 WL 72327, *4 (May 23, 1990).
{¶ 16} R.C. 4169.08(B) and (C) also state that ski-area operators and skiers have certain enumerated responsibilities. For example, ski-area operators must mark certain snowmaking equipment, and skiers must ski within the limits of their ability. R.C. 4169.08(B)(1) and (C)(1). And R.C. 4169.09 states that a “ski area operator * * * or skier is liable for injury, death, or loss to person or property * * * caused by the operator’s * * * or skier’s failure to fulfill any of the responsibilities required by this chapter.” Therefore, reading R.C. 4169.08(B) and (C) in context with R.C. Chapter 4169, we find that the responsibilities of ski-area operators and ski-area visitors are reciprocal. In other words, the General Assembly intended that ski-area operators owe skiers certain enumerated responsibilities, and in return, skiers owe ski-area operators certain enumerated responsibilities. Thus, we hold that R.C. 4169.08(C) does not create a duty of care that applies between skiers.
{¶ 17} Accordingly, we hold that R.C. Chapter 4169, and in particular R.C. 4169.08 and 4169.09, does not apply to personal-injury litigation between skiers.
Common Law
{¶ 18} Having determined that R.C. Chapter 4169 does not apply to personal-injury litigation between skiers, we turn to the common law to determine the proper standard of care applicable between skiers. This court has held that “[w]here individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant’s actions were either reckless or intentional as defined in [2 Restatement of the Law 2d, Torts, Section 500, and 1 Restatement of the Law 2d, Torts, Section 8A (1965)].” Marchetti v. Kalish, 53 Ohio St.3d 95, 559 N.E.2d 699, syllabus; see also Thompson v. McNeill, 53 Ohio St.3d 102, 559 *53 N.E.2d 705. “Obviously, without our stating so, in Marchetti and Thompson we applied ‘primary’ assumption-of-risk principles in limiting the defendant’s liability.” Gentry v. Craycraft, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, ¶ 11. Primary assumption of the risk means that a defendant owes no duty whatsoever to the plaintiff. Gallagher v. Cleveland Browns Football Co., 74 Ohio St.3d 427, 431-432, 659 N.E.2d 1232 (1996).
{¶ 19} Clearly, skiing is a sport or recreational activity. However, “only those risks directly associated with the activity in question are within the scope of primary assumption of risk.” Id. at 432, citing Cincinnati Baseball Club Co. v. Eno, 112 Ohio St. 175, 147 N.E. 86 (1925). “To be covered under the [primary-assumption-of-the-risk] doctrine, the risk must be one that is so inherent to the sport or activity that it cannot be eliminated.” Konesky v. Wood Cty. Agricultural Soc., 164 Ohio App.3d 839, 2005-Ohio-7009, 844 N.E.2d 408, ¶ 19 (6th Dist.), citing Westray v. Imperial Pools & Supplies, Inc., 133 Ohio App.3d 426, 432, 728 N.E.2d 431 (6th Dist.1999). Where the risk at issue is not inherent, then a negligence standard applies. See Gallagher, 74 Ohio St.3d at 432, 659 N.E.2d 1232; see also Pope v. Willey, 12th Dist. No. CA2004-10-077, 2005-Ohio-4744, 2005 WL 2179317 (colliding with a truck on a road is not an inherent risk of riding an all-terrain vehicle); Goffe v. Mowell, 2d Dist. No. 98-CA-49, 1999 WL 55693 (Feb. 5, 1999) (faulty racetrack design is not an inherent risk of go-cart racing).
{¶ 20} The Supreme Court of Pennsylvania has recognized that “other skiers are as much a part of the risk in downhill skiing, if not more so, than the snow and ice, elevation, contour, speed and weather conditions. As anyone who has ever undertaken the sport of skiing is painfully aware, it is a sport in which it is common for the participants to lose control.” Hughes v. Seven Springs Farm, Inc., 563 Pa. 501, 511, 762 A.2d 339 (2000). Other courts have also recognized that collisions between skiers are an inherent risk in the sport of skiing. See Peterson ex rel. Peterson v. Donahue, 733 N.W.2d 790, 793 (Minn.App.2007); Cheong v. Antablin, 16 Cal.4th 1063, 1069, 68 Cal.Rptr.2d 859, 946 P.2d 817 (1997); Gern v. Basta, 809 N.Y.S.2d 724, 725, 26 A.D.3d 807 (2006). We agree that collisions between skiers are an inherent risk of skiing.
{¶ 21} Accordingly, we hold that skiers assume the ordinary risks of skiing, which include collisions with other skiers, and cannot recover for an injury unless it can be shown that the other skier’s actions were reckless or intentional.
IV. Conclusion
{¶ 22} The judgment of the court of appeals is affirmed, albeit on somewhat different grounds. We agree that there is a genuine issue of material fact to be considered, but only with regard to whether Ish’s actions were more than negligent, that is, whether he acted recklessly or intentionally. Because a *54 genuine issue of fact remains, the court of appeals was correct in holding that the trial court erred in granting summary judgment. Therefore, we affirm the appellate court’s judgment, and we remand this cause to the trial court for further proceedings in accordance with this opinion.
Judgment affirmed.
O’Connor, C.J., and O’Donnell, Lanzinger, Cupp, and McGee Brown, JJ., concur.
Pfeifer, J., concurs in part and dissents in part.

. A terrain park is an area where snowboarders and skiers can do tricks or stunts using various features including jumps, rails, and half-pipes. See R.C. 4169.01(1).

. A “passenger tramway” is “a device used to transport passengers uphill, whether on skis or other devices or without skis or other devices, or in cars on tracks or suspended in the air, by the use of steel cables, chains, or belts or by ropes, and that is usually supported by trestles or towers with one or two spans.” R.C. 4169.01(F). Chair lifts, rope tows, and conveyors are passenger tramways. R.C. 4169.01(F)(3), (5), and (7).