TUCKER, J., concurring in part and dissenting in part:
{¶ 37} The majority opinion concludes that Parker's negligence and breach of warranty causes of action are abrogated by the OPLA. The majority opinion, based upon this determination, concludes that the trial court correctly granted ACE's summary judgment motion. I note, initially, that Parker does not discuss his warranty claims in his appellate brief, and, based upon this, I conclude that the trial court's summary judgment determination on the warranty claims should be affirmed. I conclude, turning to Parker's negligence causes of action, that these causes of action are not product liability claims as defined by the OPLA, and, as such, Parker's negligence causes of action are not abrogated. I also conclude, assuming, as we must, that Parker's recitation regarding his interaction with Reigle is accurate, that ACE, since Reigle rendered assistance to Parker, had a duty to provide such assistance with reasonable care. I, finally, conclude there exists an issue of fact concerning whether ACE breached its assumed duty of care toward Parker making summary judgment inappropriate. I, therefore, concur, in part, and dissent, in part, with the majority decision.
Negligence Causes of Action
{¶ 38} Though Parker's complaint asserts two negligence causes of action against ACE (negligence and negligent misrepresentation), Parker, as distilled by his deposition testimony, asserts a single negligence cause of action. This cause of action asserts, in essence, that ACE, through Reigle's conduct, negligently sold Parker Coleman Camp Fuel instead of the kerosene he requested. The following OPLA analysis is based upon this negligence assertion.
OPLA
{¶ 39} ACE's summary judgment motion did not assert that Parker's negligence cause of action is within the coverage of the OPLA and, as a result, abrogated. Further, ACE's brief and reply brief do not suggest such abrogation. These omissions, I suggest, are based upon ACE's recognition that Parker's negligence claim is not a products liability claim as defined by the OPLA.
{¶ 40} A products liability claim is defined at R.C. 2307.71(A)(13) as follows:
"Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
(a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
(b) Any warning or instruction, or lack of warning or instruction, associated with that product;
(c) Any failure of that product to conform to any relevant representation or warranty.
*308 Parker's negligence cause of action does not make any allegation regarding Coleman Camp Fuel that fits into R.C. 2307.71(A)(13)(a) because it is not asserted that the Coleman Camp Fuel is defective. Also, when the statutory definitions regarding subsections (b) and (c) are reviewed, it becomes apparent that Parker's negligence claim does not make any allegations regarding Coleman Camp Fuel that fit into either subsection.
{¶ 41} R.C. 2307.76 sets forth how a product may be defective based upon an inadequate warning or instruction stating in relevant part as follows:
(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:
(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.
As can be seen, a product is defective based upon an inadequate warning or instruction based upon the conduct of the manufacturer. Parker's negligence cause of action makes no allegations regarding the manufacturer of the Coleman Camp Fuel leading to the conclusion that R.C. 2307.71(A)(13)(b) has no application to the analysis.
{¶ 42} R.C. 2307.77 defines when a product is defective based upon the product not conforming to a representation, with the provision stating as follows:
A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.
A product, again as can be seen, is defective based upon the manufacturer's conduct. Parker's negligence claim does not assert that Coleman Camp Fuel was defective based upon the product not being in conformance with a manufacturer's representation.
{¶ 43} The OPLA, in most circumstances, does not, as noted, impose liability for a products liability claim upon a supplier. This preferential status, under R.C. 2307.78, has three exceptions. The first, set forth at R.C. 2307.78(B), occurs when the supplier is placed into the "shoes" of the manufacturer.[1] The second and third exceptions, as articulated by R.C. 2307.78(A), involve a supplier's independent liability for a products liability claim based upon a supplier's misrepresentation or negligence. The misrepresentation exception, R.C. 2307.78(A)(2), makes a supplier liable, irrespective of fault, for a product representation *309 made by a supplier and the product does not conform to the representation. Parker's negligence cause of action does not assert that ACE made any nonconforming representations regarding Coleman Camp Fuel. Parker's negligence cause of action, as such, cannot be considered a product liability claim on this basis.
{¶ 44} The final supplier liability carve out is R.C. 2307.78(A)(1) which provides that a supplier may be liable in a products liability claim if the supplier's negligence was a proximate cause of a claimant's injury. However, a supplier's negligence liability under R.C. 2307.78(A)(1) must emanate from a products liability claim as defined by R.C. 2307.71 et seq. It is, of course, realized that the determination of whether a claim is a product liability cause of action is not based upon the name given to the cause of action by the plaintiff but by the plaintiff's factual allegations. Parker's factual assertions, this being said, do not assert that the Coleman Camp Fuel was a defective product as statutorily defined or otherwise. Parker, instead and as noted, asserts that ACE, through Reigle's conduct, sold him Coleman Camp Fuel instead of the kerosene he requested. This claim is simply not a product liability claim under the OPLA.[2] This conclusion, of course, does not end the discussion because the trial court's summary judgment determination must be analyzed.
Duty Analysis
{¶ 45} The trial court's summary judgment decision is based upon the conclusion that, under the circumstances of this case, ACE owed Parker no duty of care. The elements of a negligence cause of action are (1) a defendant's duty of care toward the plaintiff, (2) defendant's breach of the duty of care, and (3) injury to the plaintiff that is proximately caused by defendant's violation of the duty of care. Wallace v. Ohio Dept. of Commerce , 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, citing Mussivand v. David , 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). The threshold duty element, in contrast to the breach and proximate cause elements, is a legal issue for the court's determination. Id.
{¶ 46} The issue of duty is, in most cases, a given, but, on occasion, as here, the issue is difficult and "at times elusive." Wallace at ¶ 23. In such cases, the determination of whether to impose a duty of care involves consideration of which party, under the facts of the case, should bear the loss. Mussivand v. David , 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).
{¶ 47} The duty determination, though not subject to a formulaic resolution, does rest upon an evaluation of the relationship between the parties and whether, based upon this relationship, the person upon which a duty is asserted should have foreseen that his act, or failure to act, would probably cause harm to another person. Wallace v. Ohio Dept. of Commerce , ¶ 23. As stated by the Ohio Supreme Court in Wallace , "[t]his court has often stated that the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied."
*310 Wallace , ¶ 23 (citations omitted). The duty analysis, at its core, involves a decision concerning whether the "plaintiff's interests are entitled to legal protection against the defendant's conduct." Douglass v. Salem Community Hospital , 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107 (7th Dist.), citing Morgan v. Fairfield Family Counseling Center , 77 Ohio St.3d 284, 298, 673 N.E.2d 1311 (1997).
{¶ 48} This review, turning to the pending case, is useful, but it does not answer the question of whether ACE, under the presented facts, had a duty of due care toward Parker. ACE, without dispute, owed Parker no duty regarding his product selection until Parker approached Reigel for assistance. Even then, Reigel had no legal duty to render the requested assistance, but, when a person otherwise without a duty to act decides to act, this decision may impose a duty of care upon the actor, with this concept referred to as the Good Samaritan doctrine. Indian Towing Co. v. United States of America , 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). In this case it was asserted that the United States was liable to Indian Towing based upon the Coast Guard's negligent operation of a lighthouse with this negligence causing an Indian Towing tug to run aground. The Supreme Court stated that the "Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light... and engendered reliance on the guidance afforded by the light, it was obligated to use good care to make certain that the light was kept in good working order..." Id. at 69, 76 S.Ct. 122.
{¶ 49} The Good Samaritan concept was embraced by the Ohio Supreme Court in Briere v. The Lathrop Co. , 22 Ohio St.2d 166, 258 N.E.2d 597 (1970). The Ohio Supreme Court, within the context of a claim asserted by an injured employee of a subcontractor against a general contractor, stated the following:
Where an employee of a general contractor, in the scope of his employment, voluntarily and gratuitously undertakes to assist an employee of a subcontractor in moving a scaffold, the act must be performed with the exercise of due care under the circumstances, and the failure of the general contractor's employee to exercise such care, thereby proximately causing plaintiff to fall from the scaffold, results in liability of the general contractor for the resulting injury.
Briere , paragraph one of the syllabus.
{¶ 50} The Briere decision cited with approval to the Restatement of the Law 2d, Torts (1965), 135, Section 323 which states as follows:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking.
We applied Section 323 in Plank v. DePaul Cranes, Inc. , 2d Dist. Montgomery No. 10486, 1988 WL 110312 (Oct. 21, 1988). In this case Tally, an employee of a company involved in the removal of an overhead crane, assisted Plank, an employee of another company involved in the crane removal, in Plank's effort to remove an overhead obstruction to the crane's removal. Plank, while on a ladder using a crowbar to dislodge the obstruction, came into contact with an energized crane runway system. This caused Plank to fall resulting in his death as a result of a skull fracture *311 and/or ventricular fibrillation caused by Plank's exposure to electricity.
{¶ 51} Tally's role, according to Plank's estate, involved his gratuitous decision to obtain and then hold the ladder from which Plank fell. Plank's estate argued that since Tally decided to lend assistance, he had a duty to provide such assistance with due care and he failed to do so because he should have either de-energized the crane runway or, at least, warned Plank that the overhead runway was energized.
{¶ 52} We reversed the trial court's summary judgment decision in favor of Tally's employer based upon Section 323. We initially noted that Section 323 provides alternate recovery avenues, that liability under subsection (b) requires the plaintiff's reliance upon the defendant's conduct, that such reliance is not required for the imposition of liability under subsection (a), and that Plank's situation implicated subsection (a).
{¶ 53} We, turning to the rationale for the summary judgment reversal, concluded that "[i]f it is found that Tally undertook to perform [the alleged] acts, that Tally failed to exercise reasonable care in assisting Plank to ascend the ladder without taking adequate precautions to guard against his falling or against the electrical hazard, that the risk of harm to Plank increased as a result, and that these facts proximately caused Plank's death, [Tally's employer] would be liable for Plank's death pursuant to Section 323 of the Restatement." Plank at *8.
{¶ 54} In this case, since Parker requested Reigel's assistance, it seems that Section 323(b) is the better fit. Section 323(b) allows the imposition of liability upon a gratuitous actor if the intended beneficiary's reliance upon the conduct proximately causes the injury at issue. The "Restatement does not define the precise contours of § 323(b) liability," but the case law suggests that the imposition of liability requires that a "plaintiff's reliance must be reasonably foreseeable by the defendant under the circumstances." Turbe v. Gov't of the Virgin Islands , 938 F.2d 427, 431 (3d Cir.1991) citing Nallan v. Helmsley-Spear, Inc. , 50 N.Y.2d 507, 522-23, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980).
{¶ 55} I, turning to the pending case, would reverse the trial court's summary judgment decision based upon Section 323(b). I reach this conclusion because if a jury would conclude that Reigel acted as Parker asserts, that Reigel should have recognized that her conduct, though gratuitous, was necessary for Parker's protection, that Reigel failed to use reasonable care in assisting Parker by selecting Coleman Camp Fuel, that Parker purchased and then used the Coleman Camp Fuel in reliance upon Reigel's conduct, that Reigel should have reasonably foreseen Parker's reliance, and that Parker's reliance proximately caused his injuries, liability against ACE under Section 323(b) could appropriately be imposed. Of course, a jury's assessment would include consideration of whether Parker was comparatively negligent with this consideration potentially mitigating or eliminating ACE's liability.
{¶ 56} This conclusion rejects ACE's argument that, as a matter of law, its only duty to Parker was to insure that the manufacturer's warning was affixed to the cans of Coleman Camp Fuel Parker purchased. This duty contention, though not articulated with Section 323 in mind, goes to the issue of whether Reigel should have reasonably foreseen that Parker, instead of reading the warning, would rely upon her selection of the Coleman Camp Fuel to start the brush fire. Resolution of this issue is appropriately left to a jury. Parker's failure to read the warning label is a comparative negligence issue, but, given *312 Reigel's asserted conduct, I am unwilling to conclude that an affixed warning label was ACE's only duty to Parker.
{¶ 57} This conclusion also rejects ACE's argument that primary assumption of the risk acts as an absolute shield to ACE's liability. Primary assumption of the risk acts, in appropriate circumstances, to preclude the imposition of a duty of due care. Horvath v. Ish , 134 Ohio St.3d 48, 2012-Ohio-5333, 979 N.E.2d 1246. If triggered, it is an absolute defense to a plaintiff's claim that a defendant's negligence proximately caused injury to the plaintiff. Id.
{¶ 58} Primary assumption of the risk, usually applicable in the context of a recreational activity, recognizes that certain activities expose an individual to dangers that cannot be eliminated, and if one chooses to engage in such an activity, he cannot look to someone else for protection. Brumage v. Green , 2d Dist. Champaign No. 2014-CA-7, 2014-Ohio-2552, 2014 WL 2727004. Primary assumption of the risk applies to those risks which are inherent to the activity. Id. , ¶ 12. For instance, a racetrack's negligent design is not a risk inherent to participation in a go-cart racing event, and, as such, primary assumption of the risk would not act to eliminate a plaintiff's negligent design claim. Goffe v. Mower , 2d Dist. Clark No. 98-CA-49, 1999 WL 55693 (Feb. 5, 1999).
{¶ 59} In this case, the risk that Reigel would select Coleman Camp Fuel when Parker requested kerosene is not a risk inherent to the ignition of the brush fire that caused Parker's injuries. Primary assumption of the risk, given this, is simply not applicable to this case.
Conclusion
{¶ 60} I, based upon the foregoing, would reverse and remand the trial court's summary judgment decision.

These circumstances are: (1) the manufacturer is not subject to process in Ohio; (2) the manufacturer is insolvent; (3) the supplier owns the manufacturer of the product; (4) the manufacturer owns the supplier; (5) the supplier created or furnished the manufacturer with the product's design or formulation; (6) the supplier altered, modified, or failed to maintain the product, and this failure made the product defective; (7) the supplier marketed the product under its own label; and (8) the supplier, upon request, failed to provide a claimant with the manufacturer's name and address.

It would seem, since, under R.C. 2307.78(A)(1), a plaintiff may establish a products liability claim against a supplier based upon the supplier's negligence, that, assuming Parker's claim is a products liability cause of action, the issue of whether ACE's negligence proximately caused Parker's injuries was before the trial court. Therefore, it would also seem, again assuming that we are dealing with a products liability cause of action, that the OPLA would not act to abrogate Parker's claim that ACE's negligence proximately caused his injuries.