[Cite as *Jester v. Utilimap Corp.*, 2018-Ohio-4755.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHRISTA L. JESTER, on behalf of THE ESTATE OF KEITH A. JESTER, deceased, | : | APPEAL NO. C-170576<br>TRIAL NO. A-1500283 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| UTILIMAP CORPORATION, | : | |
| Defendant-Appellant, | : | |
| and | : | |
| DUKE ENERGY OHIO, INC., | : | |
| and | : | |
| DUKE ENERGY BUSINESS SERVICES, LLC, | : | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  November 30, 2018

*Spangenberg Shibley & Liber LLP*, *Peter Weinberger*, *Stuart E. Scott* and *Jeremy A. Tor*, for Plaintiff-Appellee,

*Squire Patton Boggs LLP* and *Pierre H. Bergeron*, and *Dinsmore & Shohl LLP*, *Bryan E. Pacheco* and *Kirk M. Wall*, for Defendant-Appellant.

DETERS, Judge.

{¶1}   Defendant-appellant Utilimap Corporation ("Utilimap") appeals the almost $28-million judgment entered against it in this wrongful-death and survivorship lawsuit brought by plaintiff-appellee Christa Jester ("Plaintiff"), following the death of her husband, Keith Jester.  Jester worked for Duke Energy Ohio, Inc., and he died after a wooden utility pole collapsed on him.  Plaintiff sued defendants Duke Energy Ohio, Inc., and Duke Energy Business Services, LLC, (collectively "Duke Energy") and Utilimap, a company hired by Duke Energy to inspect utility poles, including the collapsed pole.  Because we determine that the trial court erred prior to trial in prohibiting Utilimap from arguing evidence of Duke Energy's fault to the jury, and because the trial court erred in denying Utilimap's request that the jury apportion fault to Duke Energy, we reverse the trial court's judgment and remand the matter for further proceedings.

## I.    INTRODUCTION

### A. Background Facts

{¶2}   Duke Energy sought to remove a line of four utility poles on a farm in Warren County, Ohio, and replace the above-ground lines with an underground line. The poles were located inside private property, and the employees would not be able to reach the wires with a truck, so they would have to manually climb the poles. Jester, a senior lineman, volunteered to do the job and lead a training exercise in the process.  Jester and the crew headed out to do the job in late February 2014.  The crew removed the equipment from the first old pole and let down two electrical wires that had been hanging between the first and second poles.  At this point a gap formed at the groundline at the base of the second pole.  Prior to climbing, Jester's

2

coworkers watched him sound test the pole with his hammer, and the pole sounded solid. Jester and another Duke Energy groundsman began climbing the second pole, which stood 40 feet tall. While both men were on the pole, the pole broke below the groundline with Jester taking the brunt of the force of the falling pole. Jester died at the hospital from internal injuries.

{¶3} An investigation into the incident ensued, and Duke Energy determined that the pole had been severely decayed below the groundline. The subject pole should have been inspected for decay and underground rot approximately two and a half years before the incident, as part of a 2011 inspection program, in which Duke Energy contracted Utilimap to inspect 30,000 poles in Southwest Ohio, including the subject pole; however, the subject pole was never inspected.

{¶4} The 2011 inspection program began in mid-2011 and required Utilimap to complete a detailed inspection, and in some cases treatment, of each and every pole. When a Utilimap inspector could not access a pole, Utilimap had to notify Duke Energy by phone, and then by email if the access issues could not be resolved. If a pole showed signs of decay, or if a pole had been previously treated for decay, an inspector had to conduct a groundline excavation of the pole, which meant digging around the pole to a depth of 18 inches below the groundline. Given the unexpected number of poles that required a full, groundline excavation, Utilimap and Duke Energy had concerns about whether the contract could be completed by the target date of November 15, 2011. Utilimap transferred its inspectors from other parts of the country to Southwest Ohio to get the job done. Those inspectors had not

been a part of the initial training session given by Duke Energy. In November 2011, Utilimap indicated that it had completed its inspections.

## B. Procedure

{¶5} Plaintiff filed an action against Duke Energy and Utilimap. Plaintiff alleged that Duke Energy had a duty to ensure a safe workplace, and breached that duty because it failed to take steps to address inaccurate and incomplete inspection data from Utilimap and failed to inspect the pole. Plaintiff alleged that Utilimap was negligent in performing its inspection.

{¶6} During the course of discovery, Duke Energy produced a PowerPoint presentation that it had shown its employees following the incident. The presentation purported to outline factors that contributed to Jester's death, as uncovered in an investigation by Duke Energy's "root cause" team. The PowerPoint acknowledged that Duke Energy's preclimb inspection standards, particularly in cold weather, had been "missing key content." Utilimap requested the final report and analysis of the root-cause team ("the RCA report"), as well as any underlying materials. Duke Energy refused to produce the RCA report, arguing that it was protected attorney work product. The trial court reviewed the RCA report in camera and denied Utilimap's motion to compel.

{¶7} Duke Energy also produced documents from an audit that it had conducted of Utilimap's performance under the contract. David Bosse, the project manager of the Utilimap contract, testified in his deposition that Duke Energy conducted a random audit of four percent of the 30,000 poles at the end of 2011 and the beginning of 2012. The audit revealed that some poles had not been inspected properly, and others had not been inspected at all because of problems accessing

4

poles. Some of those poles were over 20 years old, which, under the Utilimap contract, would have required a below-ground inspection.

{¶8} At the close of discovery, Duke Energy moved for summary judgment, arguing that Plaintiff had received workers' compensation benefits, and no evidence existed to support an intentional-tort claim. Plaintiff opposed the motion, but also argued that in the event that the trial court granted Duke Energy's motions, Utilimap should be barred from raising the empty-chair defense provided under R.C. 2307.23. Plaintiff also filed a motion in limine, and reiterated this argument. Utilimap moved for summary judgment, in part arguing that it could not be held liable for Jester's injuries as a matter of law because climbing a pole is an inherently dangerous activity.

{¶9} The trial court granted summary judgment to Duke Energy, finding that no genuine issue of material fact existed as to whether an intentional tort had been committed. The trial court denied summary judgment to Utilimap. The trial court also granted Plaintiff's motion in limine/counter-motion for partial summary judgment and concluded that Utilimap was barred from raising the empty-chair defense at trial, because no evidence existed that Duke Energy had been negligent. With Duke Energy dismissed from the case, and Utilimap prohibited from arguing an empty-chair defense under R.C. 2307.23, the case proceeded to a lengthy jury trial.

{¶10} At trial, Jason McWaters, the Utilimap inspector assigned to inspect the subject pole, testified that he had attempted to inspect the pole in October 2011, but he could not access the pole because it was located in a field of crops on private property. Duke Energy required Utilimap inspectors to keep data on every pole, and

5

so McWaters noted in a data spreadsheet that the pole's circumference was zero and he wrote "bean field" in the comments section. Neither McWaters, nor his supervisor, Grady Breece, could recall whether they had told Duke Energy that they could not access the pole, and neither Utilimap nor Duke Energy had kept records of their 2011 communications.

{¶11} Plaintiff presented expert testimony from a wood scientist who testified that Utilimap would have discovered rot in the subject pole beginning six inches below the groundline had it conducted an inspection of the pole in the fall of 2011. The pole would have been considered a priority pole.

{¶12} Utilimap argued that Jester had been trained by Duke Energy to look for green staining on a pole, which can be an indication of internal rot in a pole. Jester should have seen the green staining on the subject pole and investigated further by digging the ground out around the base of the pole. Plaintiff's wood expert refuted the notion that green staining would be a warning sign to a lineman prior to climbing a pole. Utilimap also argued that Jester should have "guyed" the pole or created a support a system for the pole, once the lines were taken down and the pole began to lean.

{¶13} Utilimap renewed its request to have the jury apportion fault to Duke Energy, which the trial court denied. The jury determined that Jester was not negligent and determined that Utilimap was 100 percent negligent. The jury ultimately returned a verdict for Plaintiff for nearly $28 million, including $24 million in noneconomic damages. After the disposition of post-trial motions, including Utilimap's motion for a new trial, the trial court entered judgment on the jury's verdict. Utilimap has appealed.

## II. ANALYSIS

### A. Assumption of the Risk

{¶14} We first address Utilimap's sixth assignment of error in which it argues that the trial court erred in denying Utilimap judgment as a matter of law, because pole climbing is an inherently dangerous activity and Jester assumed the risk of poll collapse, so that Utilimap owed no duty to Jester. An appellate court conducts a de novo review of issues of law, such as the application of the doctrine of assumption of the risk. *Cameron v. Univ. of Toledo*, 2018-Ohio-979, 98 N.E.3d 305, ¶ 46 (10th Dist.).

{¶15} Assumption of the risk is an affirmative defense to a negligence claim, and it occurs, in general terms, when a person consents to a known risk. *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 112, 451 N.E.2d 780 (1983). With the adoption of comparative negligence in Ohio, the Ohio Supreme Court in *Anderson* held that the defense of implied assumption of the risk merged with the defense of contributory negligence, except for express and primary assumption of the risk. *Id.* Express assumption of the risk occurs when a person expressly agrees not to hold another liable for negligence. *Id.* After *Anderson*, the Ohio legislature included express assumption of the risk within the definition of contributory fault, except in products-liability actions. *See* R.C. 2307.011(B).

{¶16} Primary assumption of the risk occurs in situations where a certain danger is "so inherent to the sport or activity that it cannot be eliminated." *Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, 979 N.E.2d 1246, ¶ 19. With primary assumption of the risk, a defendant owes no duty to the injured person because of the nature of the activity, and not because of any action or inaction on the part of the

defendant. *Ferguson v. Cincinnati Gas & Elec. Co.*, 69 Ohio App.3d 460, 462, 590 N.E.2d 1332 (1st Dist.1990). Because Jester did not contract to release Utilimap from liability, Utilimap must rely on primary assumption of the risk.

{¶17} Primary assumption of risk requires a court to find "(1) the danger is ordinary to the activity, (2) it is common knowledge that the danger exists, and (3) the injury occurs as a result of the danger during the course of the activity." *Cameron* at ¶ 45. The Ohio Supreme Court has applied primary assumption of the risk to recreational pursuits and sporting activities. *See id.* at ¶ 42; *Horvath* at ¶ 18-19. Because assumption of the risk defeats a negligence claim, courts "must proceed with caution when contemplating whether primary assumption of risk completely bars a plaintiff's recovery." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432, 659 N.E.2d 1232 (1996).

{¶18} Utilimap argues that climbing a 40-year-old utility pole is inherently dangerous and urges us to follow a federal district court case interpreting Ohio law, *Thayer v. GTE North, Inc.*, N.D. Ohio No. 3:91-cv-07276-JWP (Dec. 23, 1992). In *Thayer*, an independent contractor was injured when a rotted telephone pole collapsed on him. The contractor sued the company that owned the telephone pole. The district court determined under R.C. 4101.11 that the telephone company owed the contractor the same duty owed to that of an invitee. R.C. 4101.11 requires an employer to furnish a safe workplace to its employees and "frequenters." The duty owed to frequenters under R.C. 4101.11, however, does not apply to an independent contractor engaged in inherently dangerous work, pursuant to *Eicher v. U.S. Steel Corp.*, 32 Ohio St.3d 248, 512 N.E.2d 1165 (1987). The district court reasoned that

8

pole collapse was a hazard inherently and necessarily present in pole climbing, so that the company owed no duty to the contractor under *Eicher*.

{¶19} *Eicher* deals with premises liability and an employer's duty to warn an independent contractor of hazardous conditions on the property of which the employer has knowledge but the contractor does not. Utilimap did not own or control the premises where Jester was injured and Jester was not an independent contractor. Therefore, the *Eicher* exception applied in *Thayer* cannot be used by Utilimap to defeat Plaintiff's negligence claim.

{¶20} Nor did Jester assume the risk of pole collapse under the doctrine of primary assumption of the risk. Because Jester was killed while working, not participating in a recreational or sporting activity, it is doubtful that the affirmative defense of primary assumption of the risk applies in this situation. *See Cameron*, 2018-Ohio-979, 98 N.E.3d 305, at ¶ 42; *Horvath*, 134 Ohio St.3d 48, 2012-Ohio-5333, 979 N.E.2d 1246, at ¶ 18-19. Even so, Utilimap has not shown that underground rot on a utility pole is the kind of danger "inherent" in utility work, such that it cannot be eliminated. *See Horvath* at ¶ 19. Therefore, the trial court did not err in denying Utilimap judgment as a matter of law.

{¶21} We overrule Utilimap's sixth assignment of error.

### B.  The Empty-Chair Defense and an Immune Employer

{¶22} In its first assignment of error, Utilimap argues that the trial court erred in precluding the jury from apportioning any share of fault to Duke Energy as required under R.C. 2307.23. Within this assignment of error, Utilimap also argues that the trial court erred in granting Plaintiff's counter-motion for partial summary

judgment/motion in limine, prohibiting Utilimap from arguing the empty-chair defense with regard to Duke Energy.

{¶23} Ohio law provides for joint and several tort liability as well as apportionment of fault among tortfeasors. *See* R.C. 2307.22. R.C. 2307.22 provides in relevant part that:

(A) * * *[J]oint and several tort liability shall be determined as follows:

(1) In a tort action in which the trier of fact determines that two or more persons proximately caused the same injury or loss to person or property or the same wrongful death and in which the trier of fact determines that more than fifty per cent of the tortious conduct is attributable to one defendant, that defendant shall be jointly and severally liable in tort for all compensatory damages that represent economic loss.

(2) If division (A)(1) of this section is applicable, each defendant who is determined by the trier of fact to be legally responsible for the same injury or loss to person or property or the same wrongful death and to whom fifty per cent or less of the tortious conduct is attributable shall be liable to the plaintiff only for that defendant's proportionate share of the compensatory damages that represent economic loss. The proportionate share of a defendant shall be calculated by

multiplying the total amount of the economic damages awarded to the plaintiff by the percentage of tortious conduct as determined pursuant to section 2307.23 of the Revised Code that is attributable to that defendant.

\* \* \*

(C) In a tort action in which the trier of fact determines that two or more persons proximately caused the same injury or loss to person or property or the same wrongful death, each defendant who is determined by the trier of fact to be legally responsible for the same injury or loss to person or property or for the same wrongful death shall be liable to the plaintiff only for that defendant's proportionate share of the compensatory damages that represent noneconomic loss. The proportionate share of a defendant shall be calculated by multiplying the total amount of the noneconomic damages awarded to the plaintiff by the percentage of tortious conduct as determined pursuant to section 2307.23 of the Revised Code that is attributable to that defendant.

{¶24} R.C. 2307.23, known as the "empty-chair defense," provides that a jury in a jury action must answer interrogatories to specify the following:

(1) The percentage of tortious conduct that proximately caused the injury or loss to person or property or the wrongful death that is attributable to the plaintiff and to

each party to the tort action from whom the plaintiff seeks recovery in this action;

(2) The percentage of tortious conduct that proximately caused the injury or loss to person or property or the wrongful death that is attributable to each person from whom the plaintiff does not seek recovery in this action.

{¶25} R.C. 2307.23(C) provides

For purposes of division (A)(2) of this section, it is an affirmative defense for each party to the tort action from whom the plaintiff seeks recovery in this action that a specific percentage of the tortious conduct that proximately caused the injury or loss to person or property or the wrongful death is attributable to one or more persons from whom the plaintiff does not seek recovery in this action. Any party to the tort action from whom the plaintiff seeks recovery in this action may raise an affirmative defense under this division at any time before the trial of the action.

{¶26} "Persons from whom the plaintiff does not seek recovery in this action" under R.C. 2307.23(A)(2), includes, but is not limited to:

(1) Persons who have entered into a settlement agreement with the plaintiff;

(2) Persons whom the plaintiff has dismissed from the tort action without prejudice;

(3) Persons whom the plaintiff has dismissed from the tort action with prejudice;

(4) Persons who are not a party to the tort action whether or not that person was or could have been a party to the tort action if the name of the person has been disclosed prior to trial.

R.C. 2307.011(G).

{¶27} In her counter-motion for summary judgment, Plaintiff argued that R.C. 2307.23 could not apply to an employer's negligence, because an employer cannot be held liable for negligence with respect to an employee's injuries under Ohio's workers' compensation system. *See* R.C. 4123.74. For this proposition, Plaintiff relied on *Romig v. Baker Hi-Way Express, Inc.,* 5th Dist. Tuscarawas No. 2011AP-o2-0008, 2012-Ohio-321. In *Romig*, the defendant argued that the trial court erred by refusing to introduce evidence of the injured person's employer's negligence and by refusing to allow the defendant to argue the empty-chair defense. The *Romig* court applied rules of statutory construction and determined that it could not reconcile R.C. 2307.23 with the workers' compensation scheme. The court reasoned that employer negligence does not exist, because the workers' compensation system provides the employee's exclusive remedy. Thus, the *Romig* court affirmed the trial court's refusal to allow the defendant to argue the empty-chair defense under R.C. 2307.23 with respect to the injured's employer.

{¶28} We disagree with the analysis in *Romig*. The plain language of R.C. 2307.23 allows for a jury determination of fault among parties and nonparties. R.C. 2307.23 and 2307.011(G). A nonparty to a negligence action could include an

13

employer entitled to workers' compensation immunity. The Eighth Appellate District has also declined to follow *Romig*, determining that R.C. 2307.23 is unambiguous, and that an immune employer can be included in apportionment under R.C. 2307.23. *See Root v. Stahl Scott Fetzer Co.*, 2017-Ohio-8398, 88 N.E.3d 980, ¶ 80 (8th Dist.); *Fisher v. Beazer E., Inc.*, 8th Dist. Cuyahoga No. 99662, 2013-Ohio-5251, ¶ 38 ("R.C. 2307.23 requires a jury to consider the percentage of tortious conduct attributable to each person who proximately caused the injury or loss, regardless of whether the plaintiff is seeking recovery or is able to seek recovery from that person."). As noted by the Eighth District, allowing for apportionment of fault to an employer is consistent with the purpose of the apportionment statute "to ensure that no defendant pays more than its fair share of plaintiff's damages." *Root* at ¶ 78.

{¶29} Plaintiff abandons its reliance on *Romig* on appeal. Therefore, we determine that a defendant can raise the empty-chair defense with respect to an injured's employer under R.C. 2307.23, and a jury can apportion fault to that employer under R.C. 2307.23. The question becomes then whether, in this case, Duke Energy acted tortiously, and whether those actions proximately caused Jester's death. *See* R.C. 2307.23.

### C. Evidence of Duke Energy's Fault

{¶30} R.C. 2307.23(A) and (C) contain the phrase "tortious conduct that proximately caused the injury or loss." In determining whether a person's conduct is tortious, the first step is whether that person owes the plaintiff a duty. *Visintine & Co. v. New York, C. & St. L. R. Co.*, 169 Ohio St. 505, 510, 160 N.E.2d 311 (1959). Plaintiff argues in her appellate brief that Duke Energy had no duty to supervise

14

Utilimap, an independent contractor, under the contract or common law. The issue of duty in this case is not what duty Duke Energy owed to Utilimap, but what duty Duke Energy owed to Jester, its employee, and consequently to Plaintiff. Plaintiff's amended complaint asserts that Duke Energy had a nondelegable duty to ensure a safe workplace for Jester. *See* R.C. 4101.11.

{¶31} In Plaintiff's motion prior to trial, Plaintiff argued that Utilimap should be barred from arguing the empty-chair defense because Duke Energy had no obligation under the 2011 Utilimap contract to review the inspection data from Utilimap, and no evidence existed to show that Duke Energy had acted unreasonably. The trial court agreed with Plaintiff and determined that the jury could not apportion fault to Duke Energy under R.C. 2307.23, because Utilimap had not pointed to any evidence in the record of Duke Energy's negligence.

{¶32} Whether an alleged tortfeasor is the proximate cause of an injury can be determined as a matter of law in some instances. *Reese v. Minor*, 2 Ohio App.3d 440, 441, 442 N.E.2d 782, 783 (1st Dist.1981), citing *Ornella v. Robertson*, 14 Ohio St.2d 144, 237 N.E.2d 140 (1968). It follows then that where no reasonable juror could find an alleged tortfeasor at fault, the jury should not be instructed to apportion fault to that person or entity under R.C. 2307.23. Conversely, where reasonable minds could differ as to whether an alleged tortfeasor's actions or omissions proximately caused the plaintiff's injury, negligence in that case is an issue to be determined by the trier of fact. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 646, 597 N.E.2d 504 (1992); *see O'Day v. Webb*, 29 Ohio St.2d 215, 220, 280 N.E.2d 896 (1972) ("It is uncontestably the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence, if believed, relating to that issue to

permit reasonable minds to reach different conclusions on that issue."). Where a reasonable juror could find an alleged tortfeasor negligent, the jury must be allowed to consider that tortfeasor's fault in accordance with R.C. 2307.23.

{¶33} In response to Duke Energy's motion for summary judgment on Plaintiff's intentional-tort claims, Plaintiff argued that Duke Energy acted negligently and should be held liable, in part, for Jester's death. Plaintiff cited to evidence from a 2011 Duke Energy project manager, David Bosse, and documents produced by Duke Energy in discovery, which showed that Duke Energy had performed a random audit of Utilimap's performance under the 2011 contract. Duke Energy completed the audit in early 2012, and it included four percent of the 30,000 poles subject to the 2011 contract. The audit documents showed that 20 poles had not been properly inspected, including five poles assigned to Jason McWaters—the inspector assigned to the subject pole. The audit revealed that some poles had not been inspected at all because of access issues, such as vegetation.

{¶34} Bosse conceded that the data Duke Energy received from Utilimap showed that the subject pole had not been inspected. After Duke Energy's audit uncovered uninspected poles, Bosse could not recall whether Duke Energy had further investigated any of those poles. At trial, Utilimap's counsel cross-examined Bosse regarding the audits and the inspection data.

{¶35} Plaintiff argues that whether Duke Energy should have reviewed the data it received from Utilimap requires expert testimony, because it is beyond the scope of laypersons. Whether Duke Energy should have reviewed the data is not the issue—Duke Energy did review portions of the data in its audit. What Duke Energy should have done following its review of Utilimap's inspection data is a question for

the jury. Because the purpose of the 2011 Utilimap contract was to identify decaying or rotted utility poles, a reasonable juror could conclude that once Duke Energy had completed its audit in 2012 and uncovered poles that had not been inspected, it should have taken a further review of the inspection data it received from Utilimap, prior to Jester's death in 2014. A reasonable juror could also conclude that had Duke Energy undertaken further review of the inspection data it had received from Utilimap, it would have discovered the underground rot in the subject pole, as Plaintiff's expert testified.

{¶36} Other evidence in the record would also lead a reasonable juror to conclude that Duke Energy was at fault, including that on the day of Jester's death, the temperature was well below freezing, and that Duke Energy had not adequately trained its linemen with regard to inspecting a pole in freezing conditions. Furthermore, in the aftermath of Jester's death, OSHA cited Duke Energy for various violations of OSHA rules, and Duke Energy later settled with OSHA.

{¶37} From this evidence, reasonable minds could differ as to whether Duke Energy's actions or inactions proximately caused Jester's injuries. Therefore, the trial court erred in granting summary judgment to Plaintiff with respect to Utilimap's empty-chair defense. It follows then that the trial court also erred in denying Utilimap's requests to include Duke Energy on the jury interrogatories and verdict form under R.C. 2307.23. Because the jury could have apportioned some fault to Duke Energy had Utilimap been able to fully present its empty-chair defense and had the trial court granted Utilimap's repeated requests to include Duke Energy in the apportionment of fault, we cannot say that the trial court's errors were harmless, and therefore, a new trial is warranted. *See* Civ.R. 61.

{¶38} We sustain the first assignment of error.

### D. The Remaining Assignments of Error are Moot

{¶39} In its second assignment of error, Utilimap argues that the trial court erred in excluding the RCA PowerPoint at trial. Related to its second assignment of error, Utilimap argues, is its third assignment of error, asserting that the trial court erred in denying its motion to compel the RCA report and underlying supporting materials. Utilimap argues that the trial court's errors with respect to the RCA PowerPoint and motion to compel compromised Utilimap's ability to try its case. Utilimap's fourth assignment of error asserts error in the trial court's failure to order a new trial based on an excessive damage award, and Utilimap's fifth assignment of error asserts error in the trial court's failure to order a new trial based upon irregularities in the proceeding.

{¶40} Because we have determined that the trial court erred in granting summary judgment to Plaintiff on Utilimap's empty-chair defense, that the jury should have been able to apportion fault to Duke Energy, and that therefore a new trial is warranted, Utilimap's remaining assignments of error are moot, and we decline to address them. *See* App.R. 12(A)(1)(c).

### III. CONCLUSION

{¶41} In conclusion, a defendant can raise the empty-chair defense with respect to an injured's employer under R.C. 2307.23, and a jury can apportion fault to that employer under R.C. 2307.23, even if that employer is entitled to immunity under the workers' compensation statutes. Because a reasonable juror could have found the immune employer Duke Energy negligent in regards to Jester's death, the

18

defendant Utilimap should have been able to present evidence of Duke Energy's tortious conduct to the jury, and the jury should have been instructed to apportion fault among Utilimap, Duke Energy, and Jester, in accordance with R.C. 2307.23. The trial court erred in prohibiting Utilimap from presenting its empty-chair defense with respect to Duke Energy. We sustain Utilimap's first assignment of error, reverse the trial court's judgment, and remand the cause for further proceedings.

Judgment reversed and cause remanded.

MOCK, P.J., and BROGAN, J., concur.

JAMES A. BROGAN, retired, of the Second Appellate District, sitting by assignment.

Please note:

The court has recorded its own entry on the date of the release of this opinion.